KENNETH CANFIELD, Individually and as President of Rock Drilling, Blasting, Roads, Sewers, Viaducts, Bridges, Foundations, Excavations, and Concrete Work on all Construction, Hod Carriers, Building and Common Laborers' Local Union No. 17, et al., Plaintiffs, *v.* JOSEPH V. MORESCHI, Individually and as President of International Hod Carriers', Building and Common Laborers' Union of America, et al., Defendants.

Supreme Court, Special Term, Ulster County, March 23, 1943.

*Charles De La Vergne, Francis Martocci* and *Hyman N. Glickstein* for plaintiffs.

*Henry Hirschberg* for Samuel Nuzzo and others, defendants.

*Edmond B. Butler, Edward T. Galloway, Raymond D. O'Connell, John M. Cashin* and *Arthur B. Ewig* for International Hod Carriers', Building and Common Laborers' Union of America, defendant.

MURRAY, J. This is a motion by plaintiffs for a temporary injunction pending the trial of this action. A statement or brief history of the facts is necessary for a proper understanding of the relations of the parties to each other. Joseph V. Moreschi is President and James Bove, Vice-President, of an unincorporated association called the International Hod Carriers', Building and Common Laborers' Union of America. This International Union issues so-called charters to numerous "local" unions to exercise jurisdiction for their members over construction work in certain specific territory. The International exists and its officials are paid from moneys derived and collected from such local unions.

In 1909 plaintiff, Rock Drilling, Blasting, Roads, Sewers, Viaducts, Bridges, Foundations, Excavations and Concrete Work on All Construction, Hod Carriers', Building and Common Laborers' Local Union No. 17 (hereinafter referred to as the Local Union #17), was organized and reorganized in 1936. It was then a small union of several hundred members. Its jurisdiction to act for and on behalf of its members included Ulster, Sullivan, Orange, Rockland and Greene Counties, New York, and territory adjacent thereto. Local Union #17 maintains offices in Kingston, Ulster County, Kerhonkson, Ulster County and Newburgh, Orange County. The City of New York was engaged in 1937, prior thereto and now is, in building an extensive system of water supply for its inhabitants. This work is carried on and extends through the several counties above mentioned. Part of the work consists in forming a huge reservoir, the digging of shafts and the boring of tunnels under mountains to convey the impounded water to New York City. The plan is of vast magnitude. It involves the expenditure of upwards of $300,000,000, and the employment of thousands of workers, skilled and unskilled, to complete the gigantic venture. It is called the Delaware Aqueduct Project.

The complaint charges that the International Union, for the performance of work on the Aqueduct, required the contractors to hire and employ only such workmen as were members of the International Union. That contracts to such effect were signed and executed by the International Union and the various Aqueduct contractors. Membership in Local #17 was essential for employment on the job or the different sections of the work. Applicants for membership in Local Union #17 were required to pay an initiation fee, monthly dues and assessments thereafter.

Samuel Nuzzo was Financial Secretary-Treasurer of Local Union #17; in common parlance the Business Agent. He collected all initiation fees, dues and assessments. Many complaints against him were made by members of Local Union #17 to the International. He was charged with accepting bribes from contractors, mismanaging the affairs of the Local Union and failing to enforce safety conditions on the various jobs. That his sense of responsibility was blunted. That he was lax, negligent and incompetent. After such complaints were filed, defendant Bove, Vice-President of the International, issued orders in October and November, 1937, that no further meetings be held by Local Union #17. He ordered further that nothing be done or put into effect by Local Union #17 until such mat-

ters received his approval. That Nuzzo was to continue to act as Business Representative and Secretary of Local Union #17 and continue to collect from the members moneys paid by them for dues, initiation fees and assessments. No member of Local Union #17 could work without first obtaining an O. K. card from Nuzzo. The dues of members were increased and initiation fees raised from $22 to sums ranging from $36 to $76.

The complaint further alleges that Nuzzo collected between $200,000 and $600,000. That Local Union #17 increased in membership from several hundred to approximately 5,000 members. That in December, 1940, despite large collections of money from the members, Nuzzo claimed there was only $107.93 in the treasury of Local Union #17. Thereafter on January 7, 1943, he was found guilty by a jury in Orange County, New York, of embezzling the moneys of Local Union #17, and sentenced to a term of imprisonment of from ten to twenty years in Sing Sing Prison, Ossining, New York.

Plaintiffs charge that Moreschi, Bove and Nuzzo acted in concert at all times and are still so acting to seize and maintain control of Local Union #17 for their own selfish ends, purposes and profits. That they are corrupt conspirators. The conspiracy, it is alleged, had its inception in 1937. All efforts of plaintiffs to remove and oust Nuzzo from office were resisted by him. That Moreschi and Bove aided in every way to perpetuate him and themselves in office and in control of Local Union #17. Plaintiffs charge that Nuzzo is a tool or agent of Moreschi and Bove.

The complaint *inter alia* prays for judgment that defendants and all persons acting in concert with them be restrained permanently from directly or indirectly further prosecuting the aims and purposes of the conspiracy and from interfering with the individual plaintiffs in their duties and rights as the duly elected officers of Local Union #17 or as members of the International Union and from suspending or interfering in any way with Local Union #17 in the exercise of its rights and powers as a local union in good standing of the International Union and from failing or refusing in any way to accord the individual plaintiffs the rights and privileges customarily accorded to officers of local unions in good standing of the International Union.

The Supreme Court of the State of New York, September 6, 1941 (177 Misc. 35, mod. and affd. 263 App. Div. 59), ordered that an election of officers of Local Union #17 be held, and that a detailed financial accounting be rendered to members

of the Union. This judgment of the court was the result of a trial of an action brought by plaintiff, Dusing, and others against Nuzzo and the persons then holding office with him in Local Union #17. In that action it appeared that no elections for officers had been held by the International Union for thirty years. Pursuant to the order of the court, an election was held for officers of Local Union #17, February 1, 1941. This election was held under the supervision of three representatives of the New York State Labor Relations Board. The result of the election was that Nuzzo and the other persons seeking office with him were defeated and plaintiffs, Canfield, Dusing and Baxter, were elected, respectively, President, Business Representative and Financial Secretary-Treasurer.

It is asserted by plaintiffs in their complaint that defendants, particularly Moreschi and Bove, in their efforts to maintain their wrongful, corrupt and illegal control over Local Union #17 and in pursuance of a conspiracy to keep such newly elected officers from functioning and to re-establish and reinstate Nuzzo in control, declared and threatened that if an election were held by Local Union #17 the International Union would destroy the jurisdiction of the Local Union and would forfeit and revoke its charter.

That immediately after plaintiffs were elected a campaign was instituted by Nuzzo to discredit them and oust them from office. That a policy of coercion and intimidation was inaugurated. The International deputized defendant, Patrick Waldron, to "investigate" Local Union #17, based on complaints and accusations made by Nuzzo. He presided at meetings of the Local from July, 1942, to January, 1943. Defendant, Joseph Madden, another representative of the International Union, denied in 1942 that Local Union #17 had any power or jurisdiction to act for its members in Orange County. Plaintiff Dusing, in his affidavit, swears he discussed this matter with Waldron. That he protested the action of Madden and wrote Moreschi to such effect, but to no avail. The result was that members of Local Union #17 lost their right to work under conditions established by their local union in Orange County.

Nuzzo and his other associates in this action now claim they are the duly elected and responsible officers of Local Union #17. That they have instituted an action in the Supreme Court, Orange County, praying judgment that the court declare them to be the validly elected officers of the Local Union. Nuzzo and associates in such action allege they are the victims of a conspiracy in which plaintiffs are the leading characters. That plaintiffs are wrongfully conspiring and consorting together

to hold office illegally in the Local Union. That unless equitable relief is granted to them they " will suffer great and irreparable loss or injury not only to themselves but to the members of said Local Union." They say in substance that the offices to which they have been elected involve a property right and unless accorded relief they will lose the fees and salaries attached to the offices.

Nuzzo and associates also pray for judgment that plaintiffs account to them for all their acts and conduct and that they be directed to deliver to them all the assets and property and records of the Local Union.

The adage that " birds of a feather flock together " is to a large extent applicable in this action since it is generally true that human beings who have common ambitions, hates and desires combine with each other also to achieve a common result.

The defendants in this action deny any wrongdoing whatever. It is impossible to determine with finality and mathematical accuracy the conflicting claims made by the respective parties to this action. Certain significant facts, however, stand out boldly which are of record and are most persuasive. They speak for themselves.

The rejection by the International Union, dominated by Moreschi, of the bitter, repeated and many protests made to it by the rank and file of Local Union #17 as to the conduct of Nuzzo is in sharp contrast with the prompt acceptance by the International of the complaints made by Nuzzo — the convicted thief — against the newly elected officers of Local Union #17. The course of action pursued by the International in supporting Nuzzo at all times before and after the election, the action of the International in placing Waldron in charge of Local Union #17 to " investigate " it and the taking away of Orange County from the jurisdiction of Local Union #17, compelling plaintiffs to appeal to the courts for an election of officers and an accounting, force the conviction that Nuzzo and associates were working at all times in close association and relationship with the International and defendants, Moreschi and Bove. It would be a confession of intellectual feebleness and moral decay to think otherwise.

No reasonable person can say from the record, as presented, that the attitude of the International Union in the premises has been purely altruistic, neutral and disinterested. One would have to be either naïve or stupid to accept such a conclusion. One would have to be hopelessly impractical not to recognize from the dirty sordid mess that the treasury of Local Union #17 would never have been looted if the International officers

acted promptly and with reasonable care when the members of Local #17 made their first protests.

It is a well-settled principle of law that in cases involving the internal affairs of an association, such as a trade union where no distinct property right is directly involved, a member who has a grievance must exhaust whatever remedies are provided within the organization before he may ask the courts to interfere. This, for the reason that the relation between the members and the association is contractual and, so long as the constitution, rules and by-laws of the association which constitute the contract do not contravene the laws of the land and the affairs of the association are conducted fairly and honestly, the courts will refuse to interfere upon the theory that the decisions of the tribunals set up within the association are binding and conclusive upon the members. It is no less true, however, that where the association has not acted strictly within the scope of its powers or where fraud, oppression or bad faith are shown, or where it appears that an appeal within the organization would be a vain and useless step, then the failure of the member to have availed himself of the remedies within the organization will not be a bar to his right to ask judicial interference.

There are now pending and undetermined two actions, one by plaintiffs and the other brought by defendants, both seeking an adjudication that they are the duly elected officials of Local Union #17. It is not the intention of the court in this motion to pass upon the merits of either action or decide same.

Plaintiffs allege that by reason of the acts of defendants their rights in and to the funds, property and other assets of the Local Union, also death benefits, strikes, lockout benefits and other benefits, privileges and protections, which all members in good standing of the Local Union have, are threatened with destruction. That there is serious danger that they will be deprived of their work and the right to earn a living and that other property rights they have are jeopardized by the acts and conduct of defendants.

Plaintiffs upon the pleadings, the affidavits and the records of *Dusing* v. *Nuzzo* (177 Misc. 35) and the judgment of the Appellate Division (263 App. Div. 59) in the same case, also *Moore* v. *Moreschi* (179 Misc. 475, affd. 265 App. Div. 989) and upon the record of *People* v. *Nuzzo,* Supreme Court, Orange County, N. Y., decided January 7, 1943, are granted the temporary injunction requested herein.

Submit order.