CHARLES MOORE, Individually and as President of Compressed Air, Foundation, Caisson, Tunnel, Subway, Sewer, Cofferdam Construction Local Union No. 147 of New York, et al., Plaintiffs, v. JOSEPH V. MORESCHI, Individually and as President of International Hod Carriers', Building and Common Laborers' Union of America, et al., Defendants.*

Supreme Court, New York County, April 28, 1942.

* Affd., 265 App. Div. 989, mod. 291 N. Y. 81.

*Hyman N. Glickstein, Abraham L. Shapiro* and *Allen Goodwin* for plaintiffs.

*Edmond B. Butler, Edward T. Galloway* and *Raymond D. O'Connell* for defendants.

McCook, J.  The plaintiffs are officers and members of Local 147, an unincorporated New York association generally known

as the "Sandhogs' Union." It was, until the final acts complained of, a member in good standing of the defendant International Hod Carriers', Building and Common Laborers' Union of America. Plaintiff local's jurisdiction, as its full and popular names imply, covers compressed air, foundation, caisson, tunnel, subway, sewer, cofferdam and other heavy construction projects in New York city. This matter of jurisdiction, more particularly outside the five boroughs of New York city, and asserted to include free as well as compressed air, was one of the most sharply contested items in the trial; beyond noting that fact, however, and observing that the existence of the dispute led to some of the charges, it is necessary to say no further on the subject at present. The local was, and the international is, affiliated with the American Federation of Labor. The local union dates back, including the history of the predecessor locals consolidated to make it up, over sixty years.

The complaint alleges, in substance, a conspiracy by defendant international and the other defendants named, originating early in 1939, to seize control of Local 147, put it out of business, take over its property and destroy it, with what is said to be inevitable ruin to its members. Those chiefly charged with actual and influential participation are defendant Moreschi, president since 1926, and defendant Bove, organizer and vice-president and Moreschi's personal deputy and representative. They are accused of controlling and dominating the international union in that regard and to that end.

The following facts are not disputed. Early in April, 1939, the defendant international, through Moreschi, as president, sent the plaintiff local and each of its officers communications ordering the suspension of its officers, directing that the affairs of the local be taken over by defendant Bove, ordering that the local turn over to the defendant Bove all its funds and property, and prohibiting it from holding any further membership meetings; all without previous complaint or notice of charges and without a hearing or trial of any kind. Local 147 and its officers objected to this conduct of the defendant international and refused to comply with its orders and directions as exceeding any power or authority given it under the international constitution and in violation of the local's charter rights. The next step was that the defendant Moreschi issued further orders suspending the plaintiff local and directing Bove to take possession of it and its affairs, and again requiring that all its funds, property, books and records be turned over; and on June 1, 1939, defendant Moreschi wrote the banks where the local's funds were

on deposit subject to withdrawal upon the signatures of its officers, notifying them that no withdrawals of the local's money were to be honored except upon the signature of Bove.

Up to that time no convention or election of officers of the defendant international had been held since 1911 and, consequently, according to plaintiffs' contention, there was no tribunal in the defendant international to which the plaintiffs could appeal from such orders, and no tribunal other than a court of equity to which plaintiffs could go to secure their rights.

About June 5, 1939, the plaintiff local and others instituted an action in the Supreme Court of this county (*Gallagher* v. *Moreschi*) praying for an injunction to restrain the defendant international and defendants Moreschi and Bove from carrying out unlawful orders and directions, and particularly from suspending the plaintiff local and its officers, from seizing its property and funds, from prohibiting the holding of membership meetings, and from placing its affairs in the hands of Bove and otherwise destroying its autonomy, without charges, hearing or trial. At the same time an application was made for a temporary injunction before COLLINS, J., who, on June 22, 1939, granted the application (New York Law Journal, June 23, 1939, p. 2911). The action (as distinguished from the motion) came on for trial in June, 1941, before STEUER, J., following which, on July 12, 1941, that Justice made a decision with findings of fact and conclusions of law and signed a judgment declaring certain acts of the defendants illegal, null and void and granting a permanent injunction, reserving, however, to the international its rights of book examinations, investigation and trial on charges.

At this point, according to the complaint, a conspiracy was entered into among the defendants to destroy the jurisdiction of the plaintiff local, prevent employers from hiring its members and deprive the latter of their right to work as such, and to wreck and destroy the local, all in violation of the international constitution and the local constitution, and in violation of law. I take it this set of allegations (paragraph forty-fourth of the complaint) is intended to set out an extension of the conspiracy described in paragraph twenty-eighth. Under the second alleged conspiracy employers were informed and directed by the defendant international and the defendants Moreschi and Bove not to deal with Local 147 and not to employ its members, but to deal only with certain other locals designated by these two individual defendants and under their domination and control, and a campaign was instituted to persuade members of plaintiff local to withdraw from it and join other locals; nevertheless the

membership, or the majority, of the local refused to withdraw and it continued to function.

I resume the statement of undisputed facts. The international held a convention in St. Louis, at which defendant Moreschi rendered a lengthy report describing complaints which charged plaintiff local with acts in violation of the constitution, and the convention thereupon directed that charges be preferred by Moreschi as president against plaintiff local, its officers and members. Moreschi, purporting to act pursuant to such authority, preferred charges against the plaintiff local, its officers and members, accusing them of violating the constitution of the defendant international and its customs and practices, and ordering them to stand trial.

Following receipt of the charges, a written demand was made by the plaintiffs for the particulars so that they might have an opportunity to prepare for the hearing and defend themselves against the charges, but on November 22, 1941, the demand was refused. The hearing then began on November 28, 1941, at Washington, D. C., before members of the executive board of defendant international, consisting of various vice-presidents and its general secretary-treasurer, acting as a trial board. Further requests for a bill of particulars were refused at and during the hearing. It terminated on January 8, 1942, by a decision finding the plaintiff local and certain of its officers and members guilty of violations of the constitution, and generally guilty of all the charges contained in the original written list except Nos. 17 and 18, which were withdrawn. The decision directed that the plaintiff local be suspended from the defendant international and its charter revoked and recalled, and it also debarred certain of the plaintiffs, officers of the local and others, from being candidates or holding any office in any local union of the international for a period of time.

The defendants, or some of them, then proceeded to organize defendant " Compressed Air, Caisson, Cofferdam, Tunnel, Subway and Sewer Construction in the Greater City of New York and Compressed Air in the State of New Jersey, Local Union No. 8," to succeed plaintiff Local No. 147, and have recognized that body instead of plaintiff local ever since. Defendants Moreschi and Bove ordered and directed that all property and books of the plaintiff local be turned over to the defendant international for the use of Local No. 8 and other individual defendants; and the defendants proceeded to state to members of plaintiff local and to the various employers that it had been expelled, and was extinct, and that strike would be called against any employer of plaintiff local's members as such.

Various other illegal acts are alleged, both before and after the filing of the charges; however, I have stated as facts only the allegations which I find to have been proven.

It is contended that, by reason of all these acts of the defendants, and the impossibility for workers in the industry to obtain employment unless members of a local in good standing, the members of plaintiff local have been deprived of their right to work and earn a livelihood; that no convention or election of officers of the defendant international is scheduled to be held in the near future; and that by reason of the premises there is no tribunal within the defendant international to which the plaintiffs may appeal from the unlawful acts and conduct of the defendants, and no other tribunal than this court to which plaintiffs may go for protection of their rights, and that there is no adequate remedy at law.

The prayer of the complaint is that the defendants and their officers and agents, and others, be permanently restrained from doing any act in furtherance of the alleged conspiracy or conspiracies; from claiming or representing to any employer or other person or organization that plaintiff local has been expelled or its charter revoked; from claiming or representing to anyone that it is not a *bona fide* union or in good standing; from claiming or representing to anyone that the members of plaintiff local are not union members, are not members of the defendant international, and are not affiliated with the American Federation of Labor; from coercing any employer in these respects, or otherwise interfering with any contractual or business dealings between plaintiff local and any employer; from claiming or representing that Local 8, the defendant local union, is a chartered local of defendant international, et cetera; from collecting or receiving any membership dues or holding themselves out as authorized to collect moneys from members of plaintiff local, other than the specific payments prescribed for members in good standing of plaintiff local; from otherwise interfering with the duly constituted officers of plaintiff local; from causing any party or person to cause any member of plaintiff local to withdraw from it; from interfering with any of its charter rights; from demanding any of its funds, books, et cetera; from suspending, removing or interfering with the individual plaintiffs in the exercise of their rights and powers in connection with the plaintiff local or the defendant international; from permitting the defendant Local 8 to displace plaintiff local, et cetera; from representing to any labor organization affiliated with the American

Federation of Labor or any employer that the plaintiffs are not officers in good standing of the plaintiff local, et cetera.

The complaint further asks a judgment that the charges and decision referred to are improper and unauthorized and in excess of any power or authority of the defendant international and in violation of its constitution and the constitution of the plaintiff local and of such plaintiff's contract rights; further adjudging that the plaintiff local is a local union in good standing of the defendant international and entitled to all its rights as such and its members are members in good standing of the defendant international and entitled to all rights as such, free from interference; adjudging further that the charter issued to defendant Local 8 was unauthorized and the issuance was in excess of power and in violation of the defendant international's constitution and the rights of the plaintiffs and is null and void; adjudging that any communications to the contrary by the defendants to contractors or employers are illegal and unauthorized, and ordering that they be withdrawn; adjudging that the plaintiffs and all of the members in good standing of plaintiff local are entitled to all the rights and privileges of members in good standing of the defendant international, and have the right to elect their own union officers and the right to have wages and working conditions within the jurisdiction of plaintiff local fixed and determined and contracts negotiated by the plaintiff local's elected officers, made without interference, and adjudging that the defendant international account for damages sustained by each of the plaintiffs.

Defendants Moreschi and Bove answer separately. They deny most of the allegations of the complaint against them personally and as officers of the international. Since, in stating the facts (in distinction to the conclusions) upon which plaintiffs rely, I have included only those proved by ample evidence and plain inference, it is unnecessary to recite these denials. They also plead a counterclaim (replied to by plaintiffs), asking that plaintiffs be restrained from asserting the sole or any present jurisdiction of Local 147, and denying that of Local 8. The other defendants, singly and in groups, have separate answers which do not require discussion. The effect of the answers generally is to attempt to explain those acts which they cannot deny.

It is conceded by the defendants that in fact no individual connected with the defendant international took a more active part in relation to the plaintiff local and its officers than defendants Moreschi and Bove. Their authority to deal with plaintiffs cannot be doubted. Moreschi was the powerful head of the

international, Bove his *alter ego*. They were peculiarly the representatives of the larger organization, interpreters of its views, policies, and mandates to the smaller one. This relationship had lasted for many months of increasing irritation, disputes and, finally, bitter quarrels. There can be no doubt that both these two men were deeply biased towards plaintiff local and its officers. Moreschi in particular resented their long-continued challenging of his authority, and most of all the bringing by them of the injunction action. Bove was present at the hearing in Washington, sat with defendant international's counsel, and actively participated.

Returning to the decisions of Justices COLLINS and STEUER in *Gallagher* v. *Moreschi* (*supra*), the former, in part, reads as follows: " Recognizing the wisdom of the general policy of the law that courts should not interfere with the internal affairs of labor organizations unless a clear violation of rights compels such intervention, the proofs here satisfy me that the plaintiffs' resort to the courts is justified. The drastic powers which the defendants have assumed to exercise, the conceded fact that no convention of the international has been held, the seemingly undemocratic manner of conducting the affairs of the international, the threatened destruction of Local 147 by means of seemingly arbitrary, capricious and questionable methods, the threatened seizure of local's records and funds without first establishing a clear right thereto—these and other circumstances make it necessary, in my opinion, to preserve the *status quo* until the merits of the differences can be tried. Inasmuch as the defendants disavow any intention to disrupt the local or capture its records and funds, they should be willing to withhold drastic action, which may likely prove irremediable, until a determination of the merits. The motion is granted   *   *   *.''

The judgment of Mr. Justice STEUER was based on his own decision and findings, of which No. 37 reads as follows: " 37. There is no tribunal within the International Union to which the plaintiffs may appeal from the unlawful orders and directions of the defendants as aforesaid; nor is there any tribunal other than this Court of Equity to which the plaintiffs may appeal for redress of their grievances and for the protection of their rights against the improper, unauthorized and unlawful acts of the defendants.''

It has been already observed that this judgment did not enjoin the defendants from proceeding against the plaintiff local and its officers upon a *bona fide* investigation and a fair trial upon proper charges. However, charge No. 12, which is one of those

on which the plaintiff local was tried, reads as follows: " 12. The Local Union and its officers, in violation of their proper Local Union constitution and the International Constitution, instituted suit against the International Union, without first exhausting remedies within our own organization, causing great expense, inconvenience, and loss of valuable time to the International Union and its officers."

When in answer to this charge the attorneys for the plaintiffs at the Washington hearing offered in evidence the judgment, including this finding, it was excluded; the charge was pressed in spite of the judgment and never withdrawn. The decision of the board against the plaintiffs is, and must have been, based in part upon that charge. It reads: " We find the said Local Union 147 and the individuals above named (its officers) guilty of all of the charges contained in the written charges dated November 13, 1941, excepting the two charges numbered 17 and 18, which were withdrawn * * *."

The plaintiffs ask us to say that this showing alone requires judgment for them in this case. It may be that under the authorities, where one of several charges is " wholly unfounded," the trial can still be considered fair if the decision was based on all, provided the one bad charge is not integrated with the others. In *Polin* v. *Kaplan* (257 N. Y., 277, at 285–286) KELLOGG, J., expressed the view of the majority of the court (CARDOZO, Ch. J.; CRANE, LEHMAN and HUBBS, JJ.): " Thus the plaintiffs stand expelled for two alleged violations in combination, one of which furnished no grounds whatsoever for an expulsion. We cannot assume that the union would have expelled the plaintiffs for the violation asserted in charge No. 2 standing by itself. * * * Manifestly the violation asserted in charge No. 1 entered into the decision, as an essential ground for the expulsion decreed. It follows that the plaintiffs were expelled without power and illegally." The court cannot say as matter of law that some of the other charges in this case (excluding No. 12 and those withdrawn) were not based on sufficient evidence and were not proved. However, that does not settle the matter. Holding, as I may and do, (1) that charge No. 12 was as matter of law wholly unfounded and contrary to law, (2) that defendant Moreschi was prejudiced against plaintiffs by the bringing of the injunction action, (3) that Moreschi specially emphasized this particular grievance to the convention, which thereupon authorized him to bring the charges, (4) that he and members of the trial board, acting as the general executive board, had attempted previously to suspend

and take over the local without notice or hearing, (5) that the trial board, thus authorized and made up, rejected the evidence of the judgment of this court sustaining plaintiffs' action, including a specific finding, (6) that charge No. 12 was sustained by the trial board in its decision, contrary to the court's finding, and (7) that Bove, Moreschi's deputy, was present and helped prosecute the charges, this court is entitled to draw an inference that defendant Moreschi affected the decision of the board in this particular.

I do not mean that the trial board was, as matter of law, disqualified by prejudice or improperly constituted. Even had it been so, by failure to object to its personnel or organization, plaintiffs are barred from making such a contention here. But I am justified and required, since the charges, including No. 12, were lumped together, to inquire, and if possible discover, whether in the minds of the members of the trial board it was taken into consideration in their decision as an important element in finding plaintiffs guilty. If it was, they did not have a fair trial. I have reached the conclusion that it was, and that the trial was unfair, the decision unjust, and the situation one which calls for the interposition of a court of equity.

Evidence of practices in other locals was received not to exonerate plaintiff Local 147 from charges of violating the constitution of either body, or from dishonesty; or any other act wrong in itself and thus likely to injure the reputation of defendant international or unionism generally, but was received in evidence by the court as bearing on the relative importance of the charges, other than No. 12, in the opinion of the international, its officers and committees. Moreschi was the most important of defendant international's officers. His attitude on the stand was so arrogant as to lend credibility to items of tyrannical and oppressive conduct asserted by others and denied by himself. Bove's connection with him in the whole matter was such that they cannot be separated in responsibility.

The court was at first somewhat puzzled to understand why charge No. 12 was so persistently pressed. I have concluded that Moreschi and Bove were not sure how the members of the trial board would react to some of the other charges, especially those relating to practices not confined to plaintiff local. The facts stated in charge No. 12, on the other hand, must have been considered by them, in the circumstances, a challenge to their authority. As such, Moreschi had already played it up to the convention. As such, in his absence, his deputy Bove played it up to the lawyers for the prosecution and thus to the trial board as an

appeal to prejudice against the use of court process. In studying the motives involved, one is reminded of the legend of a complaining officer and a bandaged prisoner in the Magistrate's Court. Replying to the judge's inquiry whether the officer could not arrest people without clubbing them, the old-time policeman replied: " Yes, your Honor, but I can't club them without arresting them."

The unfairness of the decision is made clearer in the light of the punishment imposed — the most extreme available to the trial body under its constitution, interpreting it in the most merciless way and applying it in the most merciless form.

Ordinarily, of course, the courts should not and would not interfere with disciplinary measures taken within a union organization, provided the procedure has been regular. Here it was, on its face, regular. But the court has a duty to look beneath the surface. Where, as here, there is ample ground, in evidence and compelling inference, for finding prejudice, malice and, finally, unfairness in decision and penalty, the court should not hesitate to give the relief which the defendant international's machinery has been unable or unwilling to provide.

Defendant international has argued that the members of plaintiff local are not injured by its loss of a charter; only, says the international, its erring officers. The members of this particular local have an occupation peculiarly dangerous to health, life, and limb. They are desperately interested in the result. Based on experience, it would be childish to maintain that they can keep their loyalty to plaintiff local and not suffer at the hands of the all-powerful international unless the situation is changed. This family row has reached such proportions that equity, already twice compelled to intervene, must in conscience do so again.

Defendants say the plaintiffs have not come into equity with clean hands. There was a disposition at times during the trial on the part of pots to call kettles black. There are episodes in the life of Local 147 far from lily-white. However, the incidents referred to are not (outside of the charges themselves) related to the present controversy between the parties, and would not justify the court in denying relief.

Judgment for plaintiffs. Counterclaims dismissed. Settle findings and judgment. If either party desires to have the court do so, separate and preliminary decision will be made of any motions not yet disposed of, renewal being on notice.