KENNETH CANFIELD, Individually and as President of Rock Drilling, etc., Local Union No. 17, et al., Plaintiffs, *v.* JOSEPH V. MORESCHI, Individually and as President of International Hod Carriers', Building and Common Laborers' Union of America, et al., Defendants.

Supreme Court, Trial Term, Ulster County, June 2, 1943.

*Hyman N. Glickstein, Charles De La Vergne* and *Francis Martocci* for plaintiffs.

*Edmond B. Butler, Edward T. Galloway, Raymond D. O'Connell, John Cashin* and *Arthur Ewig* for International Hod Carriers' Building and Common Laborers' Union of America, and another, defendants.

*Henry Hirschberg* for Samuel Nuzzo and others, defendants.

FOSTER, J. Two actions have been consolidated and tried together before the court without a jury. One involves the validity of certain elections held for Local 17 of the International Hod Carriers' Union, and the other involves a charge that the International and individual defendants conspired to illegally take over the management and affairs of Local 17 and deprive its members of their union rights and privileges, and particularly the right of self-government. Local 17 is a labor union with its principal office at Newburgh, N. Y., and prior to 1937 had between two and three hundred members. It was reorganized in 1936 and at least from that time on has been affiliated with the International. Its status prior to that time seems to be immaterial.

The defendant Moreschi is president of the International and the defendant Bove is one of its vice-presidents. The powers of the International and its officers are defined by constitution. Local 17 also has a constitution which defines and regulates the duties of its officers and members, and except as limited by the constitution of the International, is apparently designed to give its members some measure of control over their own affairs.

Prior to the spring of 1937 the affairs of Local 17 appear to have been of little moment to those outside of its own membership. But this situation changed when it became apparent that the City of New York was about to engage in a vast construction program known as Delaware River Aqueduct Project. At this time the defendant Nuzzo was business agent for the Local and the defendant Bove was a vice-president of the International in charge of a regional office at 55 West 42nd Street, New York City. It is claimed that Bove, acting as vice-president of the International, made a deal with Nuzzo under which Bove agreed to let Local 17 have jurisdiction over the work on the Delaware River Project if Nuzzo would turn over the affairs of the Local. Bove was to take over and assume charge of the affairs of the Local and to appoint its business agents, with Nuzzo ostensibly in charge of the Local and directly responsible to Bove.

There is substantial evidence to sustain this claim. One McNearny was a member and business agent of the Sandhogs' Union, now known as Local 147, whose members were compressed air workers. He testified that he wanted to get the compressed air work on the project for his union and consulted Bove about this matter. The latter told him in substance not to go up in that area because he was going to give the work to Local 17. He also told McNearny that he was taking over Local 17 and was going to run it under the immediate direction of the defendant Nuzzo. Later on he advised McNearny to join Local 17 and told him that he would be made a business agent and would not have to run for election, in fact, that his position would be good for the life of the job. Bove made the same proposition to one Thompson who was also a member of the Sandhogs' Union. Thompson immediately resigned from the latter union and was appointed one of the business agents for Local 17. A few months later McNearny, and still later, one Wallace, were also appointed business agents for Local 17. A conference was held at Newburgh at which Bove, Nuzzo, Thompson and McNearny were present. At that conference an understanding was apparently reached to the effect that Bove was to take over Local 17, and Nuzzo was to run it for him with the assistance of four business agents, two of whom were to be McNearny and Thompson. Bove did not appear on the trial of this action and the testimony of McNearny remains uncontradicted. It is supplemented by the admissions of Nuzzo, various correspondence and the manner in which the affairs of the Local were thereafter actually administered.

In the meantime and thereafter Moreschi, as president of the International, had signed agreements with various contractors for different parts of the aqueduct work. Bove, as vice-president of the International, sent letters to the contractors advising them that Local 17 had been designated to furnish labor for such work, and also that the defendant Nuzzo was the local union representative in charge. Nuzzo's administration was far from satisfactory to the membership of the Local and numerous complaints were made by rank and file members concerning the manner in which funds were being handled and the lack of reports. Nuzzo was charged with taking bribes from contractors, and in failing to enforce safe working conditions. The members also complained about the method of appointing assistant business agents. Other complaints were made concerning Nuzzo's actions in paying bills without having the same passed upon by the Local's board of trustees. Bove became

impatient and Nuzzo relayed from him to the membership at one of its meetings that if the members, individually or ·collectively, did not like the manner in which the Local was being run they would have to accept the consequences of any action they took. Evidence concerning these matters may be found in the membership minutes.

Despite Bove's threat, apparently complaints continued and were a source of annoyance to both him and Nuzzo. On October 22, 1937, Nuzzo and Russell, the latter being president of the Local at the time, wrote a letter to Bove in which they asked for assistance because, as they alleged, the meetings of the members had become disorderly. As a matter of fact there is no credible evidence that such was the case. Bove replied on the 25th of October and issued an order prohibiting further membership meetings, suspended the officers of the Local and directed that its affairs were to be regulated and controlled by the executive board of the Local with the proviso that any actions of this board were to receive his official· approval ·before they were put into effect. He also ordered that Nuzzo and the other business agents assisting him were to continue to function, and Nuzzo as secretary-treasurer was to continue to collect dues, initiation fees, assessments and so forth, and to make certain· reports to Bove at least once every two weeks. Following this order all membership meetings of the Local were suspended. Elections and financial reports to the membership were abolished. Certain elected officials of the Local were summarily removed without charges and without a hearing. A new executive board was appointed by Nuzzo, apparently under the direction of Bove. Nuzzo obtained from the executive board, which had been appointed by him, a five-year contract to act as business agent for the Local with an option for renewal. There is testimony to indicate that the·first contract proposed was for ten years but this later was reduced to five. It should be added also that the members of the executive board extended their own terms of office for five years. Nuzzo was not wholly satisfied with this action on the part of the board and later had a contract drawn for him by a lawyer.

With Nuzzo in control, the board voted to give him an unlimited expense account, also to take away from the president of the Local the power to sign checks and to transfer the same to Nuzzo. An order was made that no one was to be permitted in the business office of the Local unless Nuzzo was present. No member was permitted to work without an O.K. card from Nuzzo. Nuzzo reported regularly to Bove as to his activities

and as to how the affairs of the Local were conducted. These reports were made both in writing and orally. Initiation fees and dues were increased on orders from Bove.

Nuzzo had complete control of the Local's funds subject, however, to the direction of Bove. There were withdrawals from these funds which were not only improper but also larcenous. As an illustration of improper withdrawals there were instances when Nuzzo paid for bodyguards in Atlantic City and in Washington. He also gave Wallace $500 in Florida, apparently to compensate the latter for some injury he had received in a fight that occurred in New York. He paid $1,500 to Wallace at Atlantic City for bodyguards, and also expended the same amount for the same purpose in the city of Washington on another occasion. Wallace incidentally was not even a member of the union although he had been appointed a business agent under the direction of Bove. Payments for bodyguards were made on orders from Bove, and were not disclosed to the membership of the Local.

Nuzzo failed to account for moneys taken into the coffers of the Local and he was subsequently indicted and, on January 7, 1943, convicted of larceny and embezzlement. Bove, however, had complete financial reports from him that were made regularly, and these reports were accepted and approved by Bove, as were also the various expenditures made by Nuzzo. Evidence as to these matters may be found in the testimony of Nuzzo himself, various letters and reports which passed between Nuzzo and Bove and in the minutes of various meetings of the executive board.

Some time in November, 1940, certain members of the union met for the purpose of seeking means to restore to the membership of the Local the right to elect its officers and to compel a financial accounting of the Local's funds. Nuzzo had spies planted at their meetings and reported to Bove concerning them. He also countered this move on the part of the dissident members by bringing charges against them to the effect that they were creating dissension and slandering the officers of the union. One of the principal dissenters, Dusing, who is a plaintiff in this action, was discharged from his job. Finally an action was brought and tried in the month of July, 1941, resulting in a judgment directing an election and directing also that a financial accounting be furnished. This judgment was affirmed with some modifications on December 12, 1941 (*Dusing* v. *Nuzzo*, 263 App. Div. 59). On February 1, 1942, an election was held under the supervision of the New York State Labor Relations

Board. Nuzzo and his associates were defeated, and on March 6, 1942, the newly elected officers of the Local, among them Dusing and Canfield, assumed office. Dusing testified that he found eleven cents in the treasury.

After this new group had assumed office as a result of the election compelled by court order they were notified on the 1st day of June, 1942, by Moreschi that because of complaints received by him he was instituting an investigation of the Local through one Schiro, who would act as his personal deputy. He also directed that Schiro was to preside at all meetings of the Local. Schiro was unable to act and some time later Patrick Waldron was designated in his place. The officials of the Local requested information as to the reasons for the proposed investigation. There is evidence to indicate that at least one of the reasons was a complaint from Nuzzo. One of the purposes of the investigation was to ascertain whether the election directed by the court and held on February 1, 1942, was in violation of the constitution. The precise nature of Nuzzo's complaint is not disclosed. The investigation as conducted by Waldron continued over a period of six months, during which time he presided at nearly every meeting of the membership and also over the executive board of the Local, and accomplished nothing of substance that the evidence discloses except that it interfered considerably with the activities of the Local.

On October 11, 1942, the membership at the regular meeting voted to hold an election of officers and fixed November 1, 1942, as the date for the special nomination meeting. At this meeting candidates were nominated and an election committee was elected to investigate into the qualifications of the candidates. November 15th following was fixed as the date for the election. Subsequently the executive board charged that the election committee had failed to perform their duty under the constitution and bylaws of the Local in investigating the qualifications of the candidates. Action on this charge was taken on the 14th of November, the day before the election was to take place, and the board, declaring an emergency to exist, ordered the election postponed for two weeks, that is, until November 29, 1942. Members of the Local were notified by various means of this postponement and a request by way of a telegram was sent to Moreschi asking him to send a personal representative to investigate the eligibility of all the candidates. Incidentally it appears that Nuzzo was one of the candidates. The election committee refused to be bound by the action of the executive board and made preparations to hold the election on the date

for which it was originally set. Several of the defendants in this action were elected at the election conducted by the election committee. Subsequently and on the 29th of November, 1942, the plaintiffs in this action were elected at the postponed election as directed by the executive board. In between and at a membership meeting on November 22, 1942, a motion was made that the action of the executive board in postponing the election for two weeks should be approved and ratified. Waldron, the personal representative of Moreschi, who presided over the meeting, refused to entertain this motion. Since the Local then had two prospective sets of officers an appeal was taken to the general executive board of the International. A hearing was set for November 29, 1942. Certain of the plaintiffs in this action notified the board that they could not appear on that day on account of the postponed election and were informed that they could appear on the following day. They did not appear and a decision of the general executive board, made December 24, 1942, upheld the election of those who were elected on the preceding 15th of November, and also determined that the election of November 29th was invalid. This decision confirmed the election of some of the defendants including Nuzzo.

The foregoing is a rough sketch of the events involved in these lawsuits. The evidence, both documentary and oral, is extremely voluminous and within the limits of this memorandum it is impossible to fill in all the details. Despite the ramifications of testimony, the course of events is fairly clear and leads directly to the chief issue of whether plaintiffs have sustained the charge of conspiracy against any or all of the defendants. To determine this issue the rights and duties under the constitutional setup of the Local and the International must of course be considered.

The powers of the International and its officers, as defined by its constitution, are very considerable indeed. The International is defined as sovereign and its powers denoted as legislative, executive and judicial. The Local is bound by the legitimate exercise of these powers because it owes its charter and very existence to the International itself. Wherever there is a fairly debatable issue as to the legitimate exercise of any powers given to the International, no court has a right to interfere. The courts cannot undertake to run labor organizations and unless it clearly appears that there has been an abuse of power, above and beyond some internal controversy that merely involves a debatable question, an appeal to the courts is not warranted. However, great as may be the powers of the International, I think it fundamental

that those powers must be exercised by its officials in good faith and for valid purposes. Due to the dictatorial setup of the parent organization, the welfare of labor is largely in their hands and they occupy in a very real sense the position of fiduciaries. Viewed in this light I think the evidence fairly establishes that the acts of Bove, Nuzzo and their associates were clearly beyond the scope of their legitimate powers as responsible labor officials.

Bove presented no defense, although he interposed an answer, except by way of argument that plaintiffs' case was weak. Nuzzo's defense was that he did what he was ordered to do. Moreschi's defense and that of the International are similar and obvious defenses, i. e., if abuses existed in the management of the Local's affairs they knew nothing of them; that Bove's authority was limited and if he abused his power such abuse should not be charged to the International.

The factual case against Bove is plain. He took over completely the affairs of Local 17. His conduct in that regard was expressly disapproved in another case. (*Dusing* v. *Nuzzo,* 263 App. Div. 59, *supra.*) It would be naive to assume that he did so merely as an individual. As an individual he was relatively unimportant, but as a vice-president of the International he was quite another figure. It would also be naive to assume that he did so without the knowledge and direction of Moreschi. The latter was the chief executive officer of the International and under its constitution in effect in 1937 had the right to direct as to what duties Bove should perform (§ 19).

An assumption, however, is not necessary either way. There is proof of the connection between these two officials, both direct and by way of inference. There are the contracts made by Moreschi, the various minutes and letters which show that complaints were taken up with Moreschi, and Haver's interview with Moreschi in which the latter expressly admitted that the business agents and the executive committee of the Local had been appointed by the International and were responsible to it. Haver, as attorney for dissident members, had written several letters relative to conditions to Moreschi, and finally obtained a personal interview. After recourse to the courts had been taken and a decision directing an election had been carried out, Moreschi instituted an investigation of the newly elected officials, partially on the complaint of Nuzzo. Although both Bove and Nuzzo were discredited insofar as their official acts were concerned by the decision in the case just mentioned, nevertheless Moreschi took no action as to them. In view of the foregoing it would strain credulity to the breaking point to hold that Bove,

Moreschi and Nuzzo were not equally concerned when Local 17 was taken over.

To return to the matter of power: The constitution of the International (edition of October, 1938, § 18) gave Moreschi as its general president authority to preside, either personally or by deputy, over the meetings of a local in case of disharmony and to depose from office, after trial, officials who were negligent or dishonest. A later edition (adopted September, 1941, art. 6) gave him the power to take over the affairs of a local when its officers were dishonest, negligent or incompetent, or when the local was not being conducted for the purpose it was chartered, or its performance of existing agreements with employers was detrimental to the general welfare and interests of the International Union. Written charges of misconduct were to be preferred in such cases, and pending a trial of such charges local officials might be suspended. The constitution of Local 17, at least the copy before me, recognizes authority thus conferred on the general president of the International (art. XIII, § 2). When Local 17 was taken over none of the foregoing conditions that might justify such action existed. This action was therefore arbitrary, oppressive and illegal. It resulted in grave injury to the Local, indeed it led directly to the looting of its treasury by Nuzzo. Although arbitrary and illegal control was lifted for a time after the decision in *Dusing* v. *Nuzzo* (*supra*) attempts were thereafter made in the same familiar pattern to again assume control, and these attempts were at least partially successful. Thus the elements of an illegal conspiracy have been shown.

Of subordinate importance, but nevertheless in my judgment involved in the same pattern, was the action of the general executive board in passing on the disputed elections. This board consists of the general president, the vice-presidents, and the general secretary-treasurer of the International. It cannot be a very large body since there are only six vice-presidents, and two of its members of course were Bove and Moreschi. It had before it the question of whether the executive board of the Local, chosen freely by the members, had the right to declare an emergency by reason of the failure of the election committee to properly investigate candidates for office, and on the basis of this to postpone for two weeks the election set for November 15, 1942. One of the candidates was Nuzzo, whose unsavory conduct was even then more than a matter of conjecture, and this fact alone was sufficient to cast doubt on any investigation conducted by the election committee who passed him. Certainly the mem-

bership would have the right to postpone the election under the circumstances, and under the Local's constitution the executive board had the power to take any action that the Local Union could take, and which because of an emergency could not be delayed until the next regular meeting. That such a course met with the approval of a majority of the members of the Local is obvious from the record. In spite of all this the general executive board held the Local board to be without power in the matter and declared the election of November 29th illegal and void. In my opinion this action was wrong, both factually and legally, and constituted another step in a program of arbitrary and conspired control.

In view of the foregoing I think that plaintiffs are entitled to injunctive relief as requested in the complaint against Moreschi as president of the International, Bove individually and as vice-president of the International, Patrick Waldron, the deputy of Moreschi, Nuzzo and the International itself. As to the defendant Madden I find the evidence is insufficient to warrant a decree, and no finding will be made over the disputed question of jurisdiction in Rockland County. As to the defendants Bilyou, Tripps, Carpino, Doolittle, Dawson, Andorosi, Ambrosetti, Delbuono and Disciglio, the evidence does not warrant a finding that they were apprised of any conspiracy or knowingly took part therein. Their alleged claim to office however is denied.

Motions by any or all the defendants to strike out certain portions of the testimony are denied, and an exception to this ruling in each instance may be entered in the record in their favor.

Motion to dismiss complaint is denied, and the defendant International's counterclaim is dismissed. Appropriate exceptions may be noted in the record.

Submit proposed findings and judgment within five days.