KENNETH CANFIELD, Individually and as President of Rock Drilling, etc., Local Union No. 17, et al., Respondents, *v.* JOSEPH V. MORESCHI, Individually and as President of International Hod Carriers', Building and Common Laborers' Union of America, et al., Defendants, and JAMES BOVE, Individually and as Vice-President of International Hod Carriers', Building and Common Laborers' Union of America, et al., Appellants.

Third Department, June 3, 1944.

*O'Connell & Butler* and *Cashin & Ewig*, attorneys (*Edmond B. Butler, Raymond D. O'Connell, Edward T. Galloway, John M. Cashin* and *Arthur B. Ewig* of counsel), for appellants International Hod Carriers', Building and Common Laborers' Union of America and James Bove as vice-president thereof.

*Moses Polakoff*, attorney for appellant James Bove, individually.

*Henry Hirschberg*, attorney for appellants Arthur Bilyeu and others.

*Charles De La Vergne* and *Francis Martocci*, and *Boudin, Cohn & Glickstein*, attorneys (*Hyman N. Glickstein, Charles De La Vergne* and *Francis Martocci* of counsel), for respondents.

HEFFERNAN, J. The defendants, with the exception of Moreschi, Waldron and Madden, who were not served with process, and also except Nuzzo, have appealed from a judgment of the Ulster Trial Term of the Supreme Court granting plaintiffs injunctive relief. A judgment for costs was rendered against certain of the defendants and from that judgment such defendants, except Waldron, have likewise appealed.

This action was instituted by plaintiff Rock Drilling, Blasting, Roads, Sewers, Viaducts, Bridges, Foundations, Excavations, and Concrete Work on all Construction, Hod Carriers', Building and Common Laborers' Local Union No. 17, a voluntary unincorporated association consisting of more than seven members and comprised of laborers engaged in the construction industry (hereafter referred to as Local 17), and by the individual plaintiffs, its officers, suing individually and on behalf of the membership of the Local, for an injunction restraining the defendants, principally the defendants International Hod Carriers', Building and Common Laborers' Union of America (hereafter referred to as International), its president, Moreschi, its vice-president, Bove, and Nuzzo, from conspiring to dominate and control the Local, from interfering with its duly elected officers and with its internal affairs, and from executing various threats against the Local and for other relief.

Local 17 was organized in 1909 and reorganized in 1936. At that time it was a small organization with fewer than one hundred members. Its business agent and financial secretary-treasurer was defendant Nuzzo.

Following its reorganization Local 17 was governed by a written constitution for the conduct of its affairs. In 1938 it adopted another constitution which was approved by Moreschi in behalf of International. That constitution made provision for certain officers and directed that they should be nominated and elected annually. We need not pause to analyze the provisions of the constitution relating thereto. They are fully covered in the trial court's findings.

Prior to 1937 Local 17 had never done any compressed air or tunnel work. Such work in that vicinity had been done by the Sandhogs' Union of New York, Local 45, and known since 1938 as Local 147.

Local 17 is one of 1,500 locals affiliated with International which consists of about 500,000 members.

To properly appraise the acts and conduct of defendants it is imperative to understand the composition of International. It is common knowledge that practically all international unions consist of thousands of individual members who belong to their affiliated locals. Not so, however, with International. Its constitution provides:

## " Article 1.

### Name, Objects and Powers

" Section 1 — This body is sovereign and independent of its component parts and shall be known as the International Hod Carriers', Building and Common Laborers' Union of America, hereinafter referred to as the International Union.

" Section 2 — It shall consist of the General President, the Vice-Presidents, and the General Secretary-Treasurer; and in convention assembled these officers and the duly elected delegates representing the Local Unions chartered by and in good standing with the International Union."

Article 3, entitled " Conventions and Representation ", provides: " This International Union shall be composed of the General President, the Vice-Presidents, the General Secretary-Treasurer, and the legally elected delegates of Local Unions in good standing at the time of the Convention and for at least three months prior thereto. No delegate shall be entitled to a seat in the Convention unless he was in good standing when elected and is at the time of the Convention."

The constitution of International which was in effect prior to September, 1941, had similar provisions. The constitution of International thus declares that International shall consist not of the individual members of the locals but of the general president, the general secretary-treasurer and the six vice-presidents, who constitute the general executive board, except that during conventions, the International is composed of the delegates " in convention assembled ", together with these eight men. Between conventions, however, it is these eight men and no others who compose the International.

It is quite significant that the first convention of International in thirty years was held in 1941. Obviously for all practical purposes International is composed not of the individual members of the local unions but of the eight men who constitute its general executive board. Moreschi has been president of International since 1926. The court found in another action (*Moore* v. *Moreschi*, 179 Misc. 475, affd. 265 App. Div. 989, mod. and affd. 291 N. Y. 81) that he acquired title to that office without an election by the membership.

Moreschi is the supreme executive, administrative and judicial officer of International. Under its constitution he is empowered not only to interpret, apply and decide the law of International but he actually makes the law. Thus section 101 of the constitution provides: " The provisions of this Constitution and the General Rules and the Constitution of Local Unions shall be interpreted and construed according to their most plain and obvious meaning, and should any doubt arise as to the proper construction of any section or rule thereof, it shall be referred to the General President, whose decision shall be final, unless reversed by the Convention." (See, also, § 75.)

Another section gave Moreschi the power, as general president, to " decide all questions of order, law and usages, and all constitutional questions, subject to an appeal to this Union." (§ 18.)

The constitution of International was thus what Moreschi said it was. His decisions and interpretations could not be overruled by the general executive board. They were subject to reversal only on an appeal to the convention. Moreschi, under the International constitution, was vested with the most sweeping and dictatorial powers to act for it; and every word and act on his part was uttered and performed in the name of International.

The controversy before us originated in 1937. In the spring of that year the city of New York was about to engage in a vast construction project known as Delaware River Aqueduct Project, for the construction of a water supply system for the city. Bove was then vice-president of International in charge of its New York office. He consulted Nuzzo and agreed to exclude the Sandhogs' Union from the Project and to give Local 17 jurisdiction of it if Nuzzo would turn Local 17 over to International. As part of the scheme Bove was to take over and assume charge of all the affairs of Local 17 and appoint its business agents, with Nuzzo in charge, working, however, directly under Bove's orders. To this proposition Nuzzo readily agreed. The work was accordingly assigned by International to Local 17 and Bove appointed Russell, Thompson, McNearney and Wallace, none of whom was a member of Local 17, as assistant business agents to work with Nuzzo under Bove. These appointments were in violation of the constitution of Local 17.

Bove told McNearney and Thompson that they could count on going up to Local 17 " for the life of this job and not have to worry about running for election every year, as we would have to in Local 45.'' They asked Bove: '' How would we know that we would not have to run for elections up there? '' Bove's answer was to the point: " I am taking over that local up there, I am going to run it myself. * * * You will stay there as long as you play ball with me. * * *. We told him that we did not think he could handle it. He said that any time he couldn't handle a small local union like that bunch of hill-billys he would quit the job. * * * Q. Did he tell you how long that job was going to be good for up in Local 17? A. Yes. * * * He told us our job was good for the length of the Project, and the Project was good from anywheres for from five to ten years.''

As soon as International's deal to take over Local 17 was closed, copies of the contract for work on the Acqueduct Project, which Moreschi had meanwhile signed in the name of International, were delivered to Nuzzo. Bove then notified the contractors by letter in the name of International that Local 17 was to execute the work under the contract and that Nuzzo was in charge of the same.

Workers who desired jobs on the Project were required to join Local 17. The work was so vast that the Local grew from a few hundred members to over five thousand. Under Bove's direction increased initiation fees were established.

The members of Local 17 complained about the deal between Nuzzo and International. When these complaints came to the ears of Bove he warned the members to keep quiet or " accept the consequences." Despite Bove's threats, the complaints continued. Nuzzo was accused of taking bribes from contractors and failing to enforce safe working conditions. He was also charged with paying bills without the approval of Local's board of trustees.

On October 22, 1937, on the pretext that there was disorder at the meetings, a pretext which Nuzzo subsequently admitted was false, Nuzzo and Russell, the latter being president of Local 17 and one of the business agents appointed by Bove, wrote the latter asking for " assistance ". Under date of October 25, 1937, Bove replied, stating that " the matter will be referred to our General President " for attention and directing that in the meantime they were to " hold no more meetings of Local Union No. 17 unless you receive orders otherwise from this office."

On November 3, 1937, Bove issued orders in writing prohibiting further membership meetings, suspending the officers of the Local and directing that until further notice the affairs of the Local " are to be regulated and controlled by the Executive Board of said Local 17 with the proviso that any and all actions voted by the said Board are to receive my official approval before said actions are put into effect." The business agents appointed by Bove were directed to " continue to function in their offices " and Nuzzo was directed to continue as business representative and secretary-treasurer of the Local, to continue to collect dues, initiation fees, assessments, et cetera, and to " make a written report of said collections and all disbursements to me at this office at least once every two (2) weeks."

The defendants took complete control of Local 17, ignored its constitution and controlled its jobs. All meetings were suspended and annual elections were abolished. Financial reports to the membership were abolished. Nuzzo was given an unlimited expense account. The power of the president of the Local to sign checks was revoked and such authority was vested exclusively in Nuzzo. No member of the Local was permitted to work without Nuzzo's approval. All these acts were in flagrant violation of both the Local and International constitutions. (Dusing v. Nuzzo, 177 Misc. 35, mod. and affd. 263 App. Div. 59.)

Acting under the direction of Bove, Nuzzo appointed a new executive board. This board extended its term of office for a

period of ten years. At the same time it extended Nuzzo's term for a like period. Nuzzo was given a written contract employing him as business agent for a period of five years with an option for renewal for a like term. This contract was approved by Bove on behalf of International.

Repeated complaints were made by the members regarding the mismanagement of the Local's affairs over which Bove and Nuzzo had established a complete dictatorship. These complaints were ignored. Early in 1939 several members of the Local retained counsel to secure an election and an accounting by defendants. This attorney was notified by Nuzzo that "they could not have any election; that they were under the direction of International; that he made his reports to International, and that he did not have to make them to anyone else." He also stated that he was appointed by Bove "and that he was responsible only to him * * * and as long as Bove was satisfied he would continue in office and so would the executive committee." The attorney in attempting to have his clients' grievances redressed interviewed Moreschi who bluntly told him that "International was going to continue to control that union." Moreschi also told him that the business agents and the executive committee of the Local had been selected by International and were responsible to it.

Failing to obtain relief from those in charge of International, in the fall of 1940 Fred Dusing and other members of the Local arranged meetings for the purpose of bringing about an election of officers and an accounting of the Local's funds. Spies were planted at these meetings by Nuzzo; they gave him a report and he in turn relayed this information to Bove.

At the direction of Bove, Nuzzo caused disciplinary proceedings to be instituted against Dusing and his associates. They were accused of "creating dissension" and "slandering the business agent". Dusing lost his job on Nuzzo's orders.

In January, 1941, the members of the Local instituted an action in the Supreme Court to compel an election and an accounting. (*Dusing* v. *Nuzzo, supra.*) The case was tried in July, 1941, before Mr. Justice BERGAN who granted plaintiffs a judgment in accordance with their prayer for relief. That judgment, with a slight modification, was affirmed by this court in December, 1941.

On February 1, 1942, the first election in the Local in five years was held with the result that Nuzzo was deprived of his office and a group of rank and file members elected. When they assumed office on March 6, 1942, they found exactly eleven

cents in the treasury and thousands of dollars in unpaid bills.

Nuzzo was subsequently indicted and convicted for the larceny and embezzlement of the Local's funds and sentenced to a term of from ten to twenty years imprisonment in Sing Sing prison.

On June 1, 1942, Moreschi notified the Local that because of complaints received by him an investigation of its affairs was being ordered. It later developed that these complaints emanated from Nuzzo. Moreschi stated that his purpose in directing the investigation was to ascertain whether or not a special assessment ordered by Local 17 '' was in violation of the constitution '' and also whether the election held on February 1, 1942, ordered by the court and supervised by it was '' in violation of the constitution.''

The trial court found that the assessment referred to by Moreschi was made necessary because of the insolvency of the Local caused by '' the acts and conduct of the defendants Moreschi, Bove and the International Union and the defendant Nuzzo ''.

Moreschi designated defendant Waldron to conduct the investigation and to preside at all meetings of Local 17. The information which Moreschi claimed he desired could have been obtained in a day. Waldron's investigation continued for more than six months.

The trial court found that this investigation was merely a pretext to prevent the Local from functioning under its newly elected officers, and to restore Nuzzo to a position of influence in the union in order to enable the defendants to re-establish their dominion and control over its affairs.

On September 24, 1942, Moreschi directed Local 17 to hold an election. On October 11, 1942, the members voted to hold an election and fixed November 1, 1942, as the date for nominations and nominations were made at that time and November 15th was fixed as the date of election. An election committee of three members was selected to investigate the qualifications of candidates.

Among those nominated for office were Nuzzo and other associates of his. Prior to November 15th, evidence was presented to the Local that Nuzzo and other nominees had left the trade and were ineligible for office.

On November 14, 1942, the executive board of the Local held a special meeting and on the basis of the evidence before it, and in accordance with the provisions of the constitution, ordered that the election be postponed for two weeks. Notice to that effect was promptly communicated to all members and also to Moreschi.

The election committee however, at the direction of Waldron, disregarded the action of the executive board and held an election on November 15th. Waldron told this committee that "he got his orders from Washington [Moreschi's headquarters] and would abide by them." The election was not held at the place specified in the official notice, official ballots were not used, nor was such election conducted as provided in the constitution, and only a small minority of the Local's members voted.

Nuzzo and his associates declared themselves elected and were immediately recognized as such by Moreschi.

On November 29, 1942, the date to which the election had been postponed by the executive board, an election was held at which the greater number of members participated with the result that the Nuzzo faction was overwhelmingly defeated.

Subsequently the general executive board of International refused to deal with the new officers and approved Moreschi's action in recognizing the election of Nuzzo.

What has been said is only a bare outline of what transpired between Local 17 on the one hand and the defendants, International, Moreschi, Bove and Nuzzo on the other. Mr. Justice FOSTER has covered the matters very fully in his findings and in his excellent and comprehensive opinion. (182 Misc. 195.)

From 1937 when jurisdiction of the Aqueduct Project was given to Local 17 down to the commencement of this action in February, 1943, these defendants, conspiring together, completely controlled and dominated the affairs of the Local. Nuzzo had charge of its finances until March 6, 1942. The record discloses that during the period of their dominion these defendants were ruthless in the administration of the Local's affairs. Rarely, if ever, have the rights of workmen been more brutally assailed. Members who refused to accept the *ipse dixit* of Moreschi and his minions were denied employment. While the members of the Local were wearing out hand and heart and brain in the struggle for existence Nuzzo and his confederates were looting their treasury and by bribery, corruption, larceny and embezzlement were piling up fortunes beside which the famed riches of ancient Lydia's kings were but a beggar's patrimony. The total amount of their ill-gotten gains, perhaps, will never be known. In the unlawful manipulation of the Local's affairs their arrogance and insolence were only equalled by their conscienceless cupidity.

The findings of the trial court are not only sustained by the evidence but warrant the statement that no reasonable mind

could reach any other conclusion. In this connection it should be noted that neither Moreschi, Bove, Waldron nor any other representative of International availed himself of the opportunity to refute the evidence of his wrongdoing.

International contends that it cannot be charged with a conspiracy through the unlawful acts of its officers. As a rule the courts will not interfere with the internal affairs of a voluntary association when such affairs are administered fairly and equitably. Courts of equity, however, will take jurisdiction when the association has not acted strictly within the scope of its powers or where its actions are tainted by conspiracy, fraud, oppression, bad faith or unfair dealing. In all such cases, courts of equity, exercising their traditional jurisdiction to relieve against such misconduct, will intervene and compel the protection or restoration of rights which have been unlawfully invaded or denied. (*Moore* v. *Moreschi,* 179 Misc. 475, *supra.*)

Finally the specious plea is made by counsel for International that their client is an innocent bystander, that the wrongdoing, if any, in this case is attributable to its officers and Nuzzo. That argument is an affront to our intelligence. The undisputed proof in this case renders the conclusion inescapable that in its dealings with Local 17 Moreschi was the International. It is, therefore, part and parcel of the unholy alliance, in which Moreschi, Bove, Waldron and Nuzzo were the actors, having for its purpose the complete subjugation of Local 17 in order to make it easy prey for plunder.

Inadvertently the judgments under review award costs against Waldron. He is not a party to the suit and hence that provision should be eliminated. The judgment granting injunctive relief should also be modified in accordance with the decision of the Court of Appeals in *Moore* v. *Moreschi* (291 N. Y. 81, *supra*) by the inclusion of a direction therein that none of its provisions shall operate to deprive International of its power to act in good faith and within the scope of its jurisdiction in proceedings by International affecting Local 17 and its members.

The judgments, as so modified, are affirmed, with costs to respondents against appellants.

BLISS, SCHENCK and BREWSTER, JJ., concur; HILL, P. J., concurs in the result.

Judgments modified and as so modified affirmed, with costs to respondents against appellants.