Nicholas M. Pette, J.
This is an action to declare that the plaintiff George Zacharias was duly elected a labor chief of the defendant, Dining Boom Employees Union, Local 1, AFL-CIO, at the general biennial election held by it on May 15, 1956, and for incidental relief. The plaintiffs have exhausted their remedies within the local and the international union, and it is agreed that they are properly before this court of equity.
The controlling facts are not in dispute. Indeed, the parties; stipulated that at the election, held on May 15, 1956, three labor-chiefs were to be elected, for which positions six candidates had theretofore been nominated — three, Messrs. Sagi, Glick and Thier — on the so-called “ Administration ” slate, and three — ■ Messrs. Holmes, Perlman and Zacharias — on the “Opposition” slate; that the names of the administration candidates appeared on line “ A ” of the voting machines and those of the opposition slate on line “ B ”; that on the morning of May 14, 1956, administration candidate Sagi died, and demand was made that his name be removed from the voting machines; that at a meeting held on the morning of May 15, 1956, prior to the opening of the polls, the elections committee of the local decided to act in accordance with section 141 of the Election Law of the State of New York, and, therefore, permitted Sagi’s name to remain on the ballot; that the members eligible to vote were afforded facilities on the voting machines for splitting their tickets and that they voted with knowledge of Sagi’s death. It was also agreed that the Honest Ballot Association, which conducted the election under the supervision of the elections committee, certified the following results with respect to the three positions of labor chief:
SAGI .............. 4846
GLICK ............ 4939
THIEB ............ 4690
HOLMES .......... 2145
PEBLMAN......... 2293
ZACHABIAS....... 2385
*60 Section 141 of the Election Law provides in pertinent part as follows: “ If a vacancy shall occur in a nomination, caused by death of the candidate subsequent to noon of the Tuesday before a general or special election and prior to the closing of the polls on such election day, and such vacancy shall not be filled as provided by this chapter, the votes cast for such deceased candidate shall be canvassed and counted, and, if he shall receive a plurality of the votes cast, a vacancy shall exist in the office for which such nomination was made to be filled in the manner provided by law for vacancies in office occurring by reason of death after election.”
Article XXVII of the by-laws of the local contains the following “ Vacancies ” provisions:
“ Section 1 — When a vacancy occurs in an Office, Staff or Representative position, the Executive Board shall decide whether the position is to be filled, except as herein otherwise provided.
“ Section 2 — Where a vacancy is to be filled, the Executive Board shall appoint a qualified replacement subject to the approval at the next General Membership Meeting.”
The executive board of the local thereupon, pursuant to the foregoing article of its by-laws, appointed a replacement for the deceased, and such action was approved “ at the next General Membership Meeting.”
The plaintiffs contend in substance that is was contrary to the by-laws of the local and the constitution of international to transform the vacancy in nominations created by Sagi’s death into a vacancy in office; that, in any event, the elections committee had no power to do so by adopting the rationale of section 141 of the Election Law of this State, since its jurisdiction was limited by section 3(e) of article XXVI of the by-laws to ‘ ‘ disputes involving the eligibility of a member to hold office or vote ’ ’ and to ‘ ‘ sign the official report of the elections. ’ ’
While it is true that the powers of the elections committee were thus limited, those of the executive committee were not. Its powers were plenary, among others, “ To act as the governing body of the Union between meetings of the Union ” (see by-laws, art. VI, § 2[a]); it was the executive committee which, in the exercise of such powers, made the decision, under article XXVII of the by-laws, that a vacancy in one of the offices of labor chief existed by reason of Sagi’s death on the eve of election, and the plurality of votes that were cast for him notwithstanding that the electors had knowledge of his demise and the opportunity to split the ticket. The executive committee’s further step, pursuant to this article, in filling the vacancy by *61 appointment, was subsequently approved by the membership itself in the manner provided by section 2 of said article. Thus, by necessary implication did the body politic of the local — its membership — ratify and approve the action that had been taken by its representatives in turning to the law of this State for guidance in coping with the emergency which the sudden death of Sagi created on the eve of the slated election.
True, no provision in the international’s constitution or in the local’s by-laws expressly authorized the course that had been taken, but it is equally true that no provision in such constitution or by-laws directly or by implication prohibited the same. The fact is that neither the constitution nor the by-laws made any provision for this exigency. Plaintiffs, however, point to section 7 of article XXVI of the by-laws as the provision which should have been followed, since it is there provided: ‘‘ The Executive Board upon finding that proper arrangements cannot be made for the nomination, election and installation, shall have authority to vary the dates, not more than sixty (60) days, provided the membership is notified by mail or through the Union Journal ten (10) days before the nominations or elections are held.” They overlook, however, that this was a general election for all elective officials of the local, and that the by-laws provided for no special election for any one official; it was much too late to postpone the election for the purpose of nominating another candidate to fill Sagi’s place, inasmuch as 10 days’ notice was required.
To uphold the plaintiffs’ contention that Zacharias, an opposition candidate, was elected one of the three labor chiefs because he received the third highest number of votes cast by the membership for living candidates — 2,385 — would be to disregard the fact that 4,846 votes were cast by the membership for the deceased Administration candidate, with knowledge that he had died.
As was stated by Mr. Justice Joseph M. Conroy in denying plaintiffs’ motion for an injunction pendente lite, “ The membership of Local 1 either had or must be presumed to have had knowledge of Article XXVII of its by-laws dealing with vacancies in office and the procedure for filling them. It would seem reasonable, therefore, to say that those members who voted for Sagi, though they knew him to be dead, did so knowing that if he received sufficient votes to be one of the top three candidates voted for, such members (indeed, all members) would have a voice in the selection of his successor (By-laws, Art. XXVII, sec. 2). Such an interpretation of intent more fairly and more realistically accords with the action of that signifi *62 cantly large number of members who voted for Sag! than, would an interpretation that they voted for him deliberately intending to waste their votes and in effect disenfranchising themselves (cf. People ex rel. Furman v. Clute, 50 N. Y. 451, 466).” (7 Misc 2d 55.)
While the foregoing decision is not controlling, upon this court (Walker Mem. Baptist Church v. Saunders, 285 N. Y. 462, 474), the logic of its reasoning is as persuasive now as it was upon the motion for the provisional remedy, since the facts stipulated upon the trial do not differ in any material respect from those presented upon that motion. In any event, the plaintiffs have failed to establish that the course adopted in the situation described in any way encroached upon, much less' violated, any provisions of the international’s constitution or the local’s by-laws, or that there is any basis for this court to interfere with the internal affairs of this labor union. (Polin v. Kaplan, 257 N. Y. 277; Canfield v. Moreschi, 268 App. Div. 64, affd. 294 N. Y. 632; Dakchoylous v. Ernst, 203 Misc. 277, affd. 282 App. Div. 1101.)
As was stated by Mr. Justice Bergan" in Dusing v. Nuzzo (178 Misc. 965, 967), “ But the courts cannot undertake to run the labor unions in detail or to interpret their laws upon every point of internal controversy. If the judicial power were exercised in this scope it would have an unfortunate consequence upon the independence and the vitality of labor unions. Experience in responsible self-government is essential to the success of union labor in protecting its economic welfare. This in . turn depends upon its independence, and the courts should intervene only in cases of grave necessity.”
Judgment is accordingly granted dismissing the complaint on the merits, without costs.
This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Submit judgment.