KOSTAS DAKCHOYLOUS, Plaintiff, v. HUGO ERNST, Individually and as President of Hotel and Restaurant Employees International Alliance and Bartenders International League of America, et al., Defendants.

Supreme Court, Trial Term, Albany County, December 16, 1952.

278

*Morris Zuckman* for plaintiff.

*James F. Carroll* for Carl Hacker, individually and as Vice-President of Hotel and Restaurant Employees International Alliance and Bartenders International League of America, and another, defendants.

*J. W. Brown* for Hugo Ernst, individually and as President, defendant.

ELSWORTH, J.  This action was tried before the court without a jury.  The relief sought by the plaintiff is an injunction to restrain the defendants from enforcing a decision and order made by the defendant Hugo Ernst as president of the international union whereby the plaintiff was removed from the office of business agent of the defendant union, Local No. 471, and suspended from membership therein for one year.

The Hotel and Restaurant Employees Union, Local No. 471, was chartered in October of 1918, with the plaintiff being a charter member.  Since that time he had been a member in good standing continuously until the decision and order above referred to was made on the 18th day of May, 1951.  He had served as business agent of the local since April of 1946 and was last elected to that office for a two-year term in April of 1950.

The charges against the plaintiff were preferred by the defendant Carl Hacker, vice-president, fourth district, under date of April 12, 1951, and were made on the following counts:

" (1) Violation of Section 1, Paragraphs (b), (g) and (i) of Article 20 of the International constitution in the following particulars, to wit:

" (a) For making false and slanderous statements concerning Vice President Carl Hacker to the effect that the Local was compelled to bear his expenses when making visits to Albany.

" (b) For discriminating against members and refusing to take care of their grievances because they were signatories to a petition to the General President asking his removal from office because of unfavorable publicity in the local Press which had linked his name and that of the Local Union with Communism.

" (2) Violation of Section 18 of Article 11 of the International constitution in the following particulars, to wit:

" (a) That he has associated himself with Communistic organizations and supported or subscribed to the subversive doctrines of the Communistic Party.

" (3) That on March 20, 1951, the Albany Joint Board adopted the following motion:

" ' Brother Caputo makes a motion that Brother Carl Hacker be present and conduct all negotiations.  Brother Edward Murray seconds the motion.  Brother Dakchoylous disapproves of the motion and votes against it.  Majority votes in favor of motion, 5 to 1.'

" That Brother Dakchoylous, in violation of the above decision, on April 4th and 5th, proceeded, with a hand-picked committee, to force meetings with the management of the Ten Eyck

Hotel without the presence of either Vice President Hacker or a representative of the Bartenders Union, and over the protest of the Hotel Ten Eyck management. And that Brother Dakchoylous and his committee did meet with the management of the Ten Eyck Hotel on the above-mentioned dates.''

The above specified provisions of the International constitution allegedly violated are as follows:

Article XX, section 1

'' (b) Gross disloyalty or conduct unbecoming a member.

'' (g) Abuse of fellow members or officers.

''(i) Disobedience to the regulations, rules, mandates, and decrees of the Local or of the officers of the International.''

Article XI, section 18

'' No person shall be eligible for, or continue to hold any office in the International Union or any of its subordinate affiliates or serve as a convention delegate or other representative of an affiliate, if such person associates himself with Communist, Fascist or similar organizations, or the Ku Klux Klan, or Columbians. Such eligibility shall likewise be denied where a person associates himself with, lends support or subscribes to the subversive doctrines of the organizations enumerated herein, similar organizations, or any organization or group that expounds or promotes any doctrine or philosophy inimical or subversive to the fundamental purposes of the constitution of the Government of the United States (The Dominion of Canada in the case of Canadian residents), American Federation of Labor, or this International Union.''

The complaint alleges a conspiracy on the part of the defendants to remove plaintiff from his job, to suspend him from membership in the union and to take over the affairs of the local. The record here fails to give basis for an affirmative finding sustaining such conspiracy charge.

All steps leading up to the trial of the charges are shown to have been orderly and regular. As above stated and shown, the charges were written and in clear, understandable language. There was proper service, ample time given for answering and due time afforded to prepare for trial. The stenographic record of the trial — complete and full — shows the same to have been conducted in a fair, impartial and dignified manner with full opportunity given the plaintiff to produce his witnesses, examine them and to cross-examine the witnesses produced against him. The trial tribunal met union requirements as fixed by the constitution. While the plaintiff appeared as his own counsel, this

was solely a matter of his own volition for nowhere is the issue raised that he was denied the privilege of having counsel. Hearing the witnesses without the administering of an oath appears to have been in accordance with union custom and that procedure was not questioned upon the trial by the plaintiff who in fact used his own witnesses in this very same manner without benefit of an oath. It could hardly be expected that a hearing of this nature would be conducted with the same formality and adherence to rules of evidence that obtain in courts of law. A reading of the record of the trial gives convincing proof of the substantial fairness with which it was carried on. The making of the decision by the general president was in accordance with constitutional provisions.

The general policy of the courts is one of noninterference with the internal affairs of labor organizations. (*Canfield* v. *Moreschi*, 182 Misc. 195; *Reilly* v. *Hogan*, 32 N. Y. S. 2d 864; *Moore* v. *Moreschi*, 179 Misc. 475.) '' The courts cannot undertake to run labor organizations and unless it clearly appears that there has been an abuse of power, above and beyond some internal controversy that merely involves a debatable question, an appeal to the courts is not warranted.'' (*Canfield* v. *Moreschi, supra*, p. 201.) The rule yields, however, '' to the exception that a patent injustice will be redressed.'' (*Reilly* v. *Hogan, supra*, p. 868.) And '' the court has a duty to look beneath the surface.'' (*Moore* v. *Moreschi, supra*, p. 485.) Under the decision of the Court of Appeals in *Polin* v. *Kaplan* (257 N. Y. 277), the constitution and by-laws of a union constitute a contract defining the rights and privileges of a member and '' if an expulsion has been decreed for acts not constituting violations of the constitution and by-laws, and not made expellable offenses thereby, either by terms expressed or implied * * * the proceedings will be set aside and the associate restored to membership.'' (P. 282.)

The records of plaintiff's trial reveals ample evidence to the effect that plaintiff stated falsely that the local was compelled to pay the expenses of Vice-President Hacker when he came to Albany and the charge — if not expressly, then certainly impliedly — comes within the constitutional inhibitions of either '' conduct unbecoming a member '' (art. XX, § 1, subd. [b]) or of '' abuse of fellow member or officers '' (art. XX, § 1, subd. [g]). Standing alone, this charge would seem insufficiently consequential to merit much, if anything, by way of penalty.

The charge of the plaintiff's refusal to take care of certain grievances of members who had signed a petition asking for his removal while factually sustained by substantial evidence has not been shown as violative of any constitutional provision specified in the charges or otherwise called to the court's attention. Plaintiff's mere refusal to act would not constitute " abuse of fellow members " (art. XX, § 1, subd. [g]). Conceivably, acts and words accompanying a refusal could constitute abuse within the constitutional language. No charge to that effect was made against the plaintiff in the counts filed. The charge as made, and which he was found to have committed, was not a constitutional violation and is therefore set aside. (See *Polin* v. *Kaplan, supra.*)

As to the further charge that the plaintiff negotiated with the Hotel Ten Eyck after the joint board had authorized Vice-President Hacker to conduct all negotiations, there is no apparent dispute in the record but what the charged negotiations were carried on by plaintiff who disapproved of the Hacker arrangement. Such conduct transgressed the provisions of subdivision (i) of section 1 of article XX of the constitution, viz., " Disobedience to the regulations, rules, mandates, and decrees of the Local ".

Section 18 of article XI of the constitution, set forth in full above, prohibits association by a member with communist organizations and the supporting or subscribing to the subversive doctrines of such organizations. The alleged violation of that provision is made in the final count remaining to be considered. The finding of the general president upon such count was as follows:

" I find from the examination of the record and the evidence adduced from the hearing that you have been guilty of associating yourself with an organization that expounds or promotes a doctrine and philosophy inimical and subversive to the fundamental principles and constitutions of the government of the United States, American Federation of Labor, and this International Union.

" From the testimony of Brother Mayakis and Brother Brickwedel there can be no doubt but that you were a member of the Communist Party. It cannot be assumed that you did not know what your affiliation actually was. In addition it is uncontroverted and admitted that you were a member of the American Labor Party; that you actively campaigned for this party despite the fact that this group is well known for its Com-

munist affiliations. From the newspaper publicity relative to your expulsion from the Albany Central Federation of Labor, and other articles, and from the statements of witness Caputo and others, and from the signed petition of the membership, it is evident that this type of association has farreaching and disfavorable effects on the position of this local in the conduct of its normal business affairs.''

The task of reviewing here all the evidence bearing upon the communistic charge in question would be a wholly impracticable one. The plaintiff has denied that he was ever a member of the Communist party, or that he has had communistic associations. Portions of the quite voluminous evidence on the issue are of little, if any, probative value. However, there is some evidence which must be accepted as giving a basis for the finding as made and this court is not free to substitute its judgment for that of the union tribunal with respect to the sufficiency thereof. Pertinent to this question of sufficiency are the following questions asked by the hearing officer together with the answers made by the plaintiff thereto:

'' Q. Charlie, might I ask one question? You heard George Mayakis and Charles Brickwedel state the fact that yesterday they saw a card which was a ticket to the Communist Party, membership No. 106955, signed by you on May 8, 1946. Was that the card you signed for the American Labor Party at the time you became a part of them? A. Well, I will be truthful. I don't remember if anybody approached me about Communist Party. They approach me about American Labor Party.

'' Q. Would it have been possible that the card you signed May 8, 1946, which is designated as 106955, would have been the card that you signed with the anticipation that you were joining the American Labor Party, or did you sign another card for the American Labor Party? A. To be truthful, I cannot recall that.

'' Q. In filing an application for the American Labor Party was it on a card or a form on a sheet of paper? A. Well, to be honest with you, I know papers there.''

The picture presented by this testimony is one where the plaintiff himself seems to leave open the door to the possibility of a communist card having been signed by him in 1946. If that were done, the resultant asserted injury to his local and its members thereby cannot be assumed as mitigated because his signing was done unwittingly and without true understanding of its import as it seems he would have inferred from his testimony as quoted.

The plaintiff Kostas Dakchoylous appears to have been a loyal and faithful member of Local No. 471 for many years. He probably did much for his union and its members. His efforts helped in bringing about better pay, impróved working conditions as well as other benefits for his fellow union members. But as held in *Polin* v. *Kaplan* (*supra*) the constitution and by-laws of his union constituted a contract fixing his rights and privileges as a member. Pursuant to and within that constitutional relationship charges have been preferred against him, they have been heard, they have been sustained and the penalty fixed. This court having found no '' patent injustice '' to be redressed save as to the one charge it has held should be set aside, has no alternative but to leave him in the position where such contractual relationship has placed him. Accordingly, the complaint is dismissed.

The foregoing constitutes the written and signed decision upon which judgment in this action shall be entered (Civ. Prac. Act, § 440). The plaintiff, however, having submitted proposed findings of fact and conclusions of law, the same are being passed on herewith.

Settle judgment on five days' notice.