**Frederick E. LEWIS**

v.

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO.**

No. 43924.

United States District Court
E. D. Pennsylvania.
April 9, 1968.

Mitchell A. Kramer, Philadelphia, Pa., for plaintiff.

Wilderman, Markowitz & Kirschner, Richard Kirschner, Philadelphia, Pa., for defendant.

## FINDINGS AND CONCLUSIONS

FULLAM, District Judge.

Plaintiff has been removed from office as president of his local union and expelled from membership therein, and has brought this action for reinstatement and other equitable relief. A preliminary injunction was sought, but this aspect of the matter was resolved at hearing by a stipulation that the status quo would be maintained pending disposition of the case in this court. Ultimately, it was further agreed that the case be regarded as on final hearing, both sides having presented all of their evidence.

On the basis of the record, I now enter the following

## FINDINGS OF FACT

1. For many years, the membership of Local 403, American Federation of State, County and Municipal Employees has consisted almost entirely of members of the Negro race. Until 1964, however, no Negro had held the office of president of the local, and no Negro had held a supervisory position within the department served by the local (the streets department).

2. On October 29, 1964, the plaintiff, who is a Negro, was elected President of Local 403. In October, 1966, he was re-elected.

3. Shortly after the plaintiff's election in 1964, the previous incumbent, one Miller (now a Vice President of District Council 33), attempted to form a new local, to be made up of supervisory personnel. Among the persons joining in this attempt were Messrs. Mintzer, Marzano, McMurray and Farrington. The attempt was unsuccessful, but several of the supervisors resigned from Local 403.

4. Plaintiff actively sought to correct what he regarded as "injustices" affecting the members of the local, including: (a) a practice whereby Local 403 members received only laborers' wages, even though performing the work of drivers; (b) an informal quota system for admission to city hospitals; (c) substandard sanitary facilities; and (d) discrimination against Local 403 members in matters of promotion and appointment to supervisory positions. Plaintiff's militancy in pursuing these objectives frequently antagonized members of District Council 33, and on several occasions he was asked to "play ball, go along with the program."

5. On September 27, 1966, plaintiff and his local filed an action in the Philadelphia Common Pleas Court (No. 3), as of No. 569, September Term, seeking to prevent District Council 33 from executing a collective-bargaining agreement with the City of Philadelphia without properly obtaining the approval of the general membership of each local, as required by the constitution of District Council 33. As a result of this litigation, Mr. Wurf, President of the International union, came to Philadelphia and conducted an election. The proposed contract was rejected by the membership.

6. While a new contract was being negotiated and before its acceptance was voted on, the international union imposed a trusteeship on Local 403, allegedly because the plaintiff had threatened to have the local withdraw from District Council 33. The following day, November, 9, 1966, Mr. Wurf, as President of the international union, by telegraphic notice suspended from office all of the officers of Local 403.

7. After exhausting its internal remedies, Local 403, on February 10, 1967, brought an action in this Court (Civil Action 42068) seeking to remove the trusteeship and to restore to office plaintiff and the other officers.

8. When that case was heard, on plaintiff's application for a preliminary injunction, on February 14, 1967, a lengthy conference was held in chambers before Judge Higginbotham. The pleadings reveal that Local 403 made the following assertions, under oath:

a) The principal formal charge against the local and its officers was failure to pay in full the per capita dues to Council 33. This charge was first made at a hearing on November 22, 1966, at which time the Council claimed arrearages totalling $19,322.-85, dating over a period since 1958. (The amount allocable to the period of plaintiff's tenure was only $3,972.45; during his tenure, the treasury of the local was increased by approximately $9,000).

b) At a hearing before the executive board of the international, plaintiff was informed that the secretary-treasurer of the international, Mr. Ames, would be sent to Philadelphia to work out a fair per capita tax adjustment and to remove the trusteeship; but two weeks later Mr. Ames appeared with a formal resolution continuing the trusteeship, and a demand that the entire $19,000 arrearage claim would have to be paid before the trusteeship would be removed.[1]

---

1. Although it is not a matter of record, I am advised that these allegations were not seriously disputed, and that Mr. Ames' alleged demand became the initial position of the defendants at the settlement conference before Judge Higginbotham.

9. The conference before Judge Higginbotham resulted in an agreement to settle the litigation upon the following terms:

a) The trusteeship would terminate on February 21, 1967.

b) The local's bank account would be restored to its pre-trusteeship condition (balance approximately $13,972.45).

c) The total per capita assessment arrearage was fixed at $11,871.90, of which $3,972.45 was to be paid upon termination of the trusteeship on February 21, 1967, and the balance was to be paid at the rate of $250 per month, without interest.

d) There would be "no recriminations" on either side, and both parties would thereafter conduct themselves "with the maximum degree of unity on behalf of the best interest of the members and the public interest."

e) Local 403 would abide by its repeated assertions that there had not been and would not be any intention to withdraw from the Council, and that it would work within the framework of the international union.

10. On March 13, 1967, a stipulation was filed, whereby Civil Action 42068 was dismissed without prejudice.

11. On May 18, 1967, plaintiff was suspended from office as President of Local 403, by telegraphic order of Mr. Wurf, president of the international union.

12. On June 14, 1967, in accordance with applicable procedures, formal charges against the plaintiff were filed by eleven of the fourteen members of District Council 33. These charges were as follows:

"1. We charge that Frederick Lewis violated Article X, Section 2(F) of the International Constitution in that he willfully violated the legally negotiated and approved collective bargaining agreement between District Council 33 and the City of Philadelphia by calling and directing a strike or work stoppage on May 4, 1967.

"2. We charge that Frederick Lewis violated Article X, Section 2(F) of the International Constitution in that he willfully violated the legally negotiated and approved collective bargaining agreement between District Council 33 and the City of Philadelphia by calling and directing a strike or work stoppage on May 18, 1967.

"3. We charge Frederick Lewis under Article X, Section 2(A) of the International Constitution in that he violated Article VI, Section 4 of the Council 33 constitution by calling and directing a strike or work stoppage on May 4, 1967.

"4. We charge Frederick Lewis under Article X, Section 2(A) of the International Constitution in that he violated Article Vi, Section 4 of the Council 33 constitution by calling and directing a strike or work stoppage on May 18, 1967.

"5. We charge Frederick Lewis, under Article X, Section 2(E) of the International Constitution in that he violated the legally authorized decisions of Council 33 by calling and directing a work stoppage on May 18, 1967."

13. Hearings were held before Chairman Zinos of the union Judicial Panel on August 4 and 5, 1967. On September 6 or 7, 1967, plaintiff received a copy of the decision of Chairman Zinos, sustaining all the charges and expelling plaintiff from the union.

14. On September 19 and 20, 1967, plaintiff appeared before the executive board of the international union in an unsuccessful attempt to appeal the order of Mr. Wurf suspending him from office.

15. On September 27, 1967, plaintiff appealed Chairman Zinos' decision to the full Judicial Panel. The appeal was heard on November 9, 1967, and its opinion, upholding Mr. Zinos' decision, was rendered on December 4, 1967.

16. The present action was filed October 27, 1967. Hearings were held on November 2 and 15, 1967, and the record was left open for inclusion of the anticipated decision of the Judicial Panel.

17. Previously, plaintiff sought to have the defendant held in contempt of court for violating the settlement agreement of February 14, 1967, on the theory that District Council 33 had renewed its harassment of the plaintiff and Local 403, and was in effect attempting indirectly to re-impose a trusteeship. After hearing, Judge Higginbotham entered an order, on October 13, 1967, dismissing the contempt citation, solely on the ground that the previous action had been settled without the entry of an actual order of court, hence there was no legal basis for holding the defendants in contempt.

18. On May 2, 1967, one William Nelson, a delegate in Local 403 representing the Fifth Highway District, was suspended from his job for five days for allegedly "interfering with city business" when he attempted to present a grievance of one of his men to the district engineer. On May 3, 1967, after a conference between Mr. Nelson, city officials and one Arnold Gaskin, business agent of Local 403, the suspension was reduced to three days.

19. On May 4, 1967, at 7:45 a. m., the plaintiff appeared at the Fifth Highway District yard and attempted to arbitrate the Nelson suspension himself, apparently unaware that the matter had already been adjusted. He stood in the gateway of the yard, with the result that on at least two occasions trucks could neither leave nor enter the yard. The city officials present refused to discuss the matter. Members of the police labor squad arrived and, after talking the matter over with them, plaintiff left the yard at about 9:45 a. m., whereupon the men returned to work.

20. On May 9, 1967, plaintiff was summoned to a meeting of District Council 33 and, after discussing matters, gave the Council his assurance that there would be no further work stoppages by Local 403.

21. On May 16, 1967, the Board of Delegates of Local 403 met and, although advised by the plaintiff of his commitment to the District Council and that he would neither lead nor sanction a work-stoppage, voted to encourage Local 403 members to take a "sick day" on May 18, 1967, in protest of Mr. Nelson's suspension. The minutes of that meeting reflect the following:

"The subject of the delegate's suspension was thoroughly discussed. The President read three (3) telegrams received by him from District Council No. 33 in reference to an action reportedly taken by him on May 4th 1967 at the Fifth Highway District store yard. Delegates decided to inform their various installations of what management was doing in reference to the delegates. (Handing out suspensions to the Delegate in the 5th District.) It was also suggested and agreed by the Delegates that in sympathy with the Delegate in the 5th District, they would suggest to their people to take a 'sick day' on Thursday, May 18th 1967. This is to be effective throughout the Highway Local. It was suggested that the locals members should take (2) two days Thursday and Friday; but the President suggested that we should not [be] too hasty. It was agreed by all present that one (1) one day would be sufficient.

"Moved, seconded and passed that the meeting be adjourned. Meeting adjourned at 11:05 p. m."

22. On May 17, 1967, plaintiff informed the men by the Highway Garage of the action taken by the Board of Delegates the previous evening.

23. On May 18, 248 men reported themselves absent due to illness. The total work force at that time included 894 men, of whom approximately 120 were normally absent on any given day, on the average.

24. The plaintiff did not call or encourage the May 18, 1967 absenteeism. On the contrary, this was the action of the Board of Delegates.

25. The absenteeism of May 18, 1967, did not constitute a work-stoppage or strike.

26. On the occasion of the May 4, 1967 incident, the plaintiff did not call a strike or order a work-stoppage, although he did, by his physical presence as an obstruction in the driveway, individually interfere with and delay the start of work at that location for approximately two hours.

27. All issues arising out of the plaintiff's conduct on May 4, 1967, were adjusted at the meeting of the District Council on May 9, 1967.

28. There is no substantial evidence to support the findings of the Judicial Panel that the plaintiff violated the constitution of Local 403, the District Council, or the International Union, or to support any of the charges against him.

## DISCUSSION

 Under sections 101(a) (5) and 102 of the "Landrum-Griffin Act", 29 U.S.C.A. §§ 411(a) (5), 412, this Court has jurisdiction over claims that a union member's rights, as set forth therein, have been violated, but not over claims that a union officer's rights, as an officer, have been violated. Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964); Mamula v. Local 1211, United Steelworkers of America, 304 F.2d 108 (3d Cir. 1962); Sheridan v. United Brotherhood of Carpenters, etc., 306 F.2d 152 (3d Cir. 1962).

 Thus, plaintiff's removal from his position as president of Local 403 is not reviewable here. But his expulsion from membership is reviewable in these proceedings. Vars v. Int'l Brotherhood of Boilermakers, etc., 204 F.Supp. 245 (D.Conn.1962), affirmed, 320 F.2d 576 (2d Cir., 1963). There is therefore no basis for defendant's motion to dismiss. George v. Bricklayers, Masons and Plasterers Int'l Union, 255 F.Supp. 239 (E.D.Wis.1966).

 The scope of review is narrow. I have no right to try the case de novo, or to re-assess the credibility of witnesses; rather, the issue is procedural due process, and the existence of evidentiary support for the appealed decision sufficient to comport with the concept of a "full and fair hearing" by the union tribunal. Allen v. Int'l Alliance of Theatrical, etc., 338 F.2d 309 [5th Cir., 1964); Vars, supra; Cf. Cole v. Hall, 339 F.2d 881 (2d Cir., 1965).

 On the other hand, penal provisions in union constitutions must be strictly construed, and courts must "overcome our reluctance [to interfere in the internal affairs of unions] when it appears that union disciplinary measures lack fundamental fairness." Allen v. Int'l Alliance, supra.

 Plaintiff has challenged the procedural regularity of the actions of the Judicial Panel, but I consider it unnecessary to pass upon these contentions, since I am satisfied that the charges sustained by the Judicial Panel are so lacking in evidentiary support as to render the action taken a violation of due process.

Charges 1 and 3 relate to the May 4th incident. This matter was resolved to everyone's satisfaction on May 9, and it seems incredible that the District Council should have attempted to breathe new life into this dispute in its charges of June 14. Be that as it may, the assertion in charge 3 that plaintiff's conduct amounted to a violation of the constitution of District Council 33 is totally erroneous as a matter of law. The only provision of the Council constitution which is even arguably applicable is Section 4, and that section merely governs the manner in which the Council may call a strike.

Charges 2, 4 and 5 relate to the May 18 incident. Of these charges, number 4 is subject to the same infirmity as No. 3, above; no violation of the Council's constitution could possibly arise from the facts alleged. Charge No. 2 is that

plaintiff wilfully violated the "no strike" clause of the collective-bargaining agreement, and charge No. 5 is that he wilfully violated a directive of District Council 33, i. e., that there would be no further work stoppages by Local 403 after May 9.

I am satisfied that the May 18, 1967, incident did not amount to a work-stoppage. In the entire 460-page record there is not an iota of proof that the slight increase in absenteeism on May 18, 1967, caused any interference with the operation of the street department, or caused work not to be done, or resulted in any lessening of the work performed that day.

Moreover, the evidence is overwhelming that the plaintiff neither caused nor encouraged the May 18 "sick day." It surely does not accord with the due process to expel plaintiff from membership because of the actions of others over whom he had no right of control, theoretical or actual.

There remains for discussion only the first charge, namely, that the plaintiff "called and directed" a work-stoppage on May 4. As to this incident (passing the fact that it was adjusted between plaintiff and the District Council on May 9), there was no competent evidence that plaintiff called the alleged stoppage, and there was no evidence at all that he directed anyone else not to work. If he did call or direct a stoppage on that occasion, he was singularly unsuccessful, since there is no evidence that anyone else participated. The most that can be said is that the plaintiff himself, by standing in the driveway, *caused* a brief interference with normal operations at that yard—but he is not charged with that offense.

On the whole record, it is impossible to escape the conclusion that the plaintiff has at all times conscientiously sought to advance the interests of the members of his local; that the membership of Local 403 is volatile, and neither easy to control nor easy to convince; and that the plaintiff has on occasion been required to act as a buffer between the Council and the membership. It is also quite clear that in recent years District Council 33 has missed few opportunities to harass Local 403 and its current leadership.

Under the peculiar circumstances of this case, including the suggestion of past racial tensions underlying some of the long history of discord, I believe the Court should be especially vigilant to safeguard the membership rights of every union member. The present record affords no rational basis for expelling plaintiff from membership in Local 403.

## CONCLUSIONS

1. This Court has jurisdiction over the parties, and over the subject-matter insofar as plaintiff's expulsion from membership in the union is concerned.

2. Plaintiff has exhausted all remedies available within the union.

3. Defendant's motion to dismiss should be denied.

4. All pending applications for interim relief are rendered moot by the filing of this final adjudication.

5. There is no substantial evidence to support any of the charges against the plaintiff.

6. Plaintiff's expulsion from membership was illegal, arbitrary and unjustified, and in violation of due process of law.

7. Plaintiff is entitled to judgment in his favor, restoring him to full membership in the union and permanently enjoining any further attempts to interfere with his rights as a member on the basis of the matters set forth in the charges filed June 14, 1967.

## ORDER

And now, this 9th day of April, 1968, it is ordered:

1. That the defendant is hereby permanently enjoined from expelling plaintiff from membership in Local 403 of the defendant union on the basis of the charges filed June 14, 1967.

2. That the defendant shall forthwith restore plaintiff to full membership in said union.

3. That the Court will retain jurisdiction, for the purpose of considering applications for further relief from time to time, as the circumstances may warrant.

4. That the defendant's motion to dismiss is hereby denied.

5. That all pending applications for interim relief are hereby dismissed, as moot.