Charles J. **BURESCH**

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 24, VILLAGE OF CROSS KEYS, BALTIMORE, MARYLAND**

and

**Charles H. Pillard, International President, International Brotherhood of Electrical Workers.**

**Civ. A. No. 70–1197–M.**

United States District Court,
D. Maryland.

June 28, 1971.

Donald G. McIntosh, Baltimore, Md., for plaintiff.

Sherman, Dunn & Cohen (Thomas X. Dunn), Washington, D.C., and Bruce N. Goldberg and Sickles, Goldberg & Sickles, Bethesda, Md., for defendants.

JAMES R. MILLER, Jr., District Judge.

Plaintiff has instituted this action against Local No. 24 of the International Brotherhood of Electrical Workers (IBEW) and the International President (IP) of the IBEW under the provisions of the Labor-Management Reporting and Disclosure Act (LMRDA), also known as the Landrum-Griffin Act, 29 U.S.C.A. § 411 et seq. Plaintiff alleges that certain acts by the defendants have violated his rights [1] under the "Bill of Rights" of the LMRDA,[2] and he desires to be reinstated as a member in good standing of Local No. 24, ". . . to all the rights and privileges of a member of the International Brotherhood of Electrical Workers with a voice in all local elections and in all collective bargaining agreements to which he may become subject as a working member in the geographical jurisdiction of Local Union No. 24."

The defendants have moved pursuant to Rule 56(b) and (c), F.R.Civ.P., for summary judgment against the plaintiff stating that ". . . upon the complaint, supporting affidavits and exhibits (both of this Defendant [Pillard] and Defendant Local 24) in that there is no genuine issue of any material fact and that Defendant is entitled to judgment as a matter of law and for reasons (in addition to but including those set forth in the Motion [for Summary Judgment] of Local 24) . . .."[3] Plaintiff has presented no affidavits or exhibits with reference to this matter and thus the court will assume that he relies solely on his complaint and memorandum of law.

The primary purpose of the summary judgment rule is ". . . to pierce the allegations of the pleadings, show that there is no genuine issue of material fact although an issue may be raised by the pleadings [footnote omitted], and that the movant is entitled to judgment

---

1. Paragraph 6 of plaintiff's complaint reads as follows:

"6. That as a result of the revocation of the charter of Local No. 28 without any cause of the plaintiff contributing thereto the plaintiff has been effectively denied certain membership rights including but not limited to: his right to vote in all union elections, his right to a voice or participation in all local collective bargaining agreements in the geographical jurisdiction where he is employed, loss of all rights to pension benefits irrespective of over 20 years of service, loss of all rights to the Death Benefit Fund irrespective of over 20 years of service, and other union constitutional rights denied."

2. "Subchapter II.—Bill of Rights of Members of Labor Organizations

"§ 411. Bill of rights; constitution and bylaws of labor organizations

"(a) (1) Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of

such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

3. "Rule 56 Summary Judgment

"(a) . . .

"(b) For Defending Party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, *move with or without supporting affidavits* for a summary judgment in his favor as to all or any part thereof.

"(c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.* A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." (Emphasis supplied).

as a matter of law [footnote omitted]. To attain this end, Rule 56 provides several methods for presenting material extraneous to the pleadings [footnote omitted]. The use of affidavits [footnote omitted] is one such method." [4]

The court, having considered the various pleadings, affidavits, and exhibits thereto and having heard oral argument supplemented by memoranda of law, believes that there is no genuine issue as to any material fact and that the defendants are entitled to judgment as a matter of law. Therefore, the motion for summary judgment by each defendant will be granted.

The court will now elaborate upon the facts and reasons which underlie this decision.

### I

In 1961, and for several years prior thereto, plaintiff was a member of Local 28 of the IBEW in Baltimore, Maryland. Plaintiff and other members of that Local became engaged in an "illegal strike," i. e., without receiving prior authority from the International President (IP) as required by the IBEW Constitution. One aftermath of the "illegal strike" was the revocation of the charter of Local 28 on August 1, 1961, by the IP. In a class action brought by several members, including the plaintiff, of Local 28, the IBEW was sued in the United States District Court for the District of Maryland to set aside the revocation. The relief prayed for was granted. (Parks v. IBEW, 203 F.Supp. 288 (D.Md.1962)). However, the United States Court of Appeals for the Fourth Circuit reversed, 314 F.2d 886, cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963), and held that the penalty of charter revocation was not too harsh, remanding the case to the District Court.

In the meantime, the IP had granted a new charter in place of Local 28 to the newly-created Local 24. The "Local 28 class" then instituted a new action in the District Court, requesting Local 24 and the IBEW to admit to membership in Local 24 any member of Local 28 who made timely application. Thereupon, the IP initiated correspondence to the "Local 28 class" to settle the matter in a non-judicial manner.

On May 13, 1963, the IP offered to the class members of former Local 28 a method by which they could retain their membership in IBEW, issuing travel cards in many local unions throughout the United States to be recognized in the territorial jurisdiction of Local 24 for employment purposes. The great majority of the class accepted, *including plaintiff*, by letter dated May 18, 1963, and a travel card was issued to him out of Local 392, Coos Bay, Oregon. The IP, in the offer, made clear that he had no power to require Local 24 or any other local union to accept applicants into membership since, by the Constitution, that was a matter exclusively within the jurisdiction of the locals.

In view of the settlement as proposed by the IP's letter of May 13, 1963, to all the "Local 28 class" (including plaintiff) and in view of the fact that the "Local 28 class" withdrew its complaint against Local 24 demanding membership therein, the District Court entered a final judgment dated May 16, 1963, dismissing the action *with prejudice* to the "Local 28 class."

Since 1963, plaintiff has sent numerous letters to the IP and Local 24 demanding membership in that Local instead of Local 392, basically for the reason that he would be in a better position to secure employment in the Baltimore area if he had such membership, even though through the years he has been working for numerous contractors under the Local 24 referral list. As the affidavits of the defendants indicate, plaintiff has, during this time, filed numerous unfair labor charges with the Fifth Region of the NLRB which were dismissed by the Regional Director after investigation, because there was no evidence to support the charges. Some of these dismissals

---

4. 6 Moore's Federal Practice, Par. 56.11[3], p. 2161.

were appealed to the Board in Washington and all were denied.

In February 1969, plaintiff filed suit in this court under 29 U.S.C. § 185 (§ 301 of the Act), Civil No. 20458, asking that the court require defendant Local 24 to grant membership to plaintiff because plaintiff was denied protection in controversies with the contractors, denied a voice in negotiations and denied a bargaining agent in the Baltimore area. Defendant filed a motion to dismiss which was granted, subject to the right of plaintiff to amend his complaint within 30 days. Plaintiff not having amended the complaint, the action was dismissed June 13, 1969, without prejudice.

The case was neither reinstituted nor appealed and, on August 11, 1969, specific charges under the IBEW Constitution were duly filed and served on plaintiff by the Financial Secretary of Local 24,[5] charging violation of Article XXVII, § 1(1) of the IBEW Constitution, which makes it a violation to refuse to exhaust internal remedies by:

"(1) Resorting to the courts for redress of any injustice which he may believe, has been done him by the I.B.E.W. or any of its L.U.'s [Local Unions] without first making use, for at least a four-month period, of the process available to him under the I.B.E.W. Constitution including any appeal or appeals from any decision against him."

A hearing was held before the Trial Board of Local 24 on September 18, 1969, at which time plaintiff appeared in his own behalf, and on September 23, 1969, plaintiff was found to be in violation of said Article and assessed $800[6] for re-

5. "August 11, 1969
"Mr. Charles Buresch
Card No. X59413
5624 Gerland Avenue
Baltimore, Maryland 21206
"Dear Sir and Brother:
"There has been filed with me in accordance with Article XXVII, Section 4, of the I.B.E.W. Constitution, charges against you by Brother William N. Mills, Card No. X59134. In accordance with that section, these charges shall be read, but not discussed, at the next regular meeting of our Local Union on Tuesday, August 26, 1969. A copy of these charges is enclosed.
"I shall also send you a notice of the filing of these charges, after the reading of the same before the Local, and advise you of time and place of hearing before the Trial Board.
Fraternally yours,
ANDREW J. CALVERT
Recording Secretary
AJC:b
OPEU # 2
Certified Mail # 564150
Return Receipt Requested"

"August 27, 1969
"Mr. Charles Buresch
Card No. X59413
5624 Gerland Avenue
Baltimore, Maryland 21206
"Dear Sir and Brother:
"You are hereby notified to appear before the Trial Board of Local Union No. 24 I.B.E.W. on Thursday, September 18, 1969, at 8:00 p. m., Suite 146, The Quadrangle, Village of Cross Keys, Baltimore, Maryland 21210, to answer charges filed against you by Brother William N. Mills, Card No. X59134, for alleged violations of Article XXVII, Section 1, sub-Section 1, of the I.B.E.W. Constitution.
"Enclosed is *a copy of the original charge* filed against you. *You may bring witnesses to give evidence in your behalf.* You will be *afforded the opportunity at the hearing to present relevant evidence* and *to cross-examine any witnesses you may desire. You may, if you desire, have an IBEW member to act as your counsel."* (Emphasis supplied).
Fraternally yours,
ANDREW J. CALVERT
Recording Secretary
AJC:b
OPEIU # 2
Certified Mail # 564149
Return Receipt Requested
cc: J. D. Keenan, I. S.
H. B. Blankenship, I.V.P.
Robert L. Cox, F.S.,
L.U. 932 IBEW"
(McCorkle Affidavit, Exhibit 5, of Defendant Local 24's *Motion for Summary Judgment).*

6. The $800 figure represents the cost of counsel fees of Local 24 in their defense of Civil No. 20458 *filed by plaintiff and dismissed on June 13, 1969, without*

sorting to the courts without first having exhausted the internal grievance and appellate machinery under the IBEW Constitution. Plaintiff was notified of the decision of the Trial Board on September 23, 1969. This assessment was imposed under the provisions of Article XXVII, § (1) (23) of the IBEW Constitution.[7]

Subsequent to the decision of the Trial Board and the assessment, plaintiff did not utilize the IBEW appellate procedures found in Article 27 §§ 12–18 of the IBEW Constitution.[8] Specifi-

prejudice, and the fees for the preparation of the transcript of the Trial Board proceedings on September 18, 1969.

7. The pertinent parts of Article XXVII, § (1) (23) are as follows:

"(23) . . .

"Any member convicted of any one or more of the above-named offenses may be *assessed or suspended, or both, or expelled.*

"*In case of conviction of violation of subsection (1) above*, the member MAY be assessed an amount equal to the reasonable attorneys' fees and costs incurred by the I.B.E.W. or L.U. as a result of said violation in addition to, or in lieu of, any other penalty." (Emphasis supplied.)

Previous to the 1966 Convention of the IBEW and for many years before that, resorting to the courts without first exhausting remedies carried a penalty of automatic expulsion. The new provision, enacted at the 1966 Convention, permits any penalty or none and *is in substance* the proviso in 29 U.S.C. § 411(a) (4), LMDRA, as follows:

"(4) Protection of the right to sue.— No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided*, That any such member may be *required to exhaust* reasonable hearing procedures (*but not to exceed a four-month lapse of time*) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further*, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition." (Emphasis supplied).

8. "Appeals

"Sec. 12. Any member who claims an injustice has been done him by any L.U. or trial board, . . . may appeal to the I.V.P. any time within 45 days after the date of the action complained of. . . .

"A copy of any appeal must be filed with the L.U., . . . as the case may be.

"Sec. 13. *No appeal for revocation of an assessment shall be recognized unless the member has first paid the assessment*, which he *can do under protest. When the assessment exceeds $25, payments of not less than $20 in monthly installments must be made.* The first monthly installment must be made within 15 days from the date of the decision rendered and monthly installments continued thereafter or the appeal will not be considered.

"Sec. 14. When a decision has been rendered by the I.V.P. it shall become effective immediately.

"Sec. 15. No appeals from decisions of the I.V.P., or from the I.P., or from the I.E.C., shall be recognized unless the party or parties appealing have complied with the decision from which they have appealed. *However, this section may be waived by the party making the decision if good and sufficient reasons are furnished and he is requested to do so.*

"Sec. 16. Appeals to the I.P. and to the I.E.C., and to the convention, to be considered, must be made within 30 days from the date of the decision appealed from. (Appeals to the I.E.C. and to conventions must be filed with the I.S.) If no appeal is made within 30 days from the date that any decision is rendered, such decision shall be considered final.

"Sec. 17. *Any member penalized or otherwise disciplined for an offense may appeal.*

"Sec. 18. When an appeal is taken above the I.V.P., only the evidence submitted in the original case of appeal shall be considered.

"In cases where parties claim they have new and important evidence affecting a case in which decision has been

cally, he did not utilize the minimum payment procedure of § 13, nor did he ever request a waiver under § 15. On the contrary, plaintiff stated to the defendant I.P., Pillard, in a letter dated February 2, 1970, that ". . . I refused to pay any fine . . . ." [9]

After the passage of more than six (6) months' time and plaintiff's failure to appeal or make payment of his assessment in accordance with the IBEW Constitution, Local 24 expelled plaintiff from the IBEW. Under Article XXIII, § 3, a member who is indebted to the local union for three months, either for his dues or for his assessments, shall stand suspended and subsequent dues may be refused to be accepted by the local until the original debt has been paid. Under § 4 of the same Article, any member indebted to the local union for six (6) months' *dues* is dropped from membership. Relying on the above-cited sections of the IBEW Constitution, Local 24 expelled plaintiff, which action prompted plaintiff's suit in this court.

Plaintiff has challenged the "power" which Local 24 exercised over him while physically present in Local 24's geographical jurisdiction, but while he held a "travel card" of Local 392, Coos Bay, Oregon. As stated before, under the provisions of the IBEW Constitution, one who holds a valid travel card is permitted to seek employment in the jurisdiction of any local union. However, under § 6 of Article XXV of the IBEW Constitution, a member is not permitted to work in the jurisdiction of another local union until his travel card has been properly accepted by the financial secretary of that local union, and any member "violating this provision is subject to assessment at the discretion of that L.U. [local union]." Also, under § 6, ". . any member violating the working rules

of another L.U. shall be subject to such punishment as decided by that L.U." Furthermore by virtue of Article XXVII, § 4, Local 24 had the power and authority to act as it did with respect to the action before the trial board. That section states:

"Charges against members *must be submitted* to the R.S. [Recording Secretary] of the L.U. *in whose jurisdiction the alleged act or acts took place within 30 days of the time* the charging party first *became aware, or reasonably should have been aware,* of the alleged act or acts." (Emphasis supplied).

From the uncontroverted pleadings and affidavits, it is clear that the charges were *not* submitted to the R.S. within 30 days of the time the charging party knew, or reasonably should have known, of the alleged violation of the IBEW Constitution by plaintiff. Plaintiff filed his suit against Local 24 in February, 1969 and it was dismissed by the court without prejudice on June 13, 1969. The appeal time of 30 days (July 13, 1969) was allowed to elapse before charges were formally submitted on August 11, 1969 by William N. Mills and communicated to the plaintiff on the same day. Thus it is likely that the initiation of the action against the plaintiff was not made within the time frame literally required by the union Constitution. The record does not disclose who William N. Mills is except that he is a member of the local. Although it is likely that William N. Mills knew or should have known the approximate date when the plaintiff filed his suit in February, 1969, (which knowledge, strictly speaking, would have required Mr. Mills to file his complaint against the plaintiff within 30 days of the acquisition of said knowledge), there is nothing in the rec-

rendered, they may submit this within 30 days to the authority who rendered the first decision, with a request that the case be reopened. Such authority shall decide whether the matter submitted justifies reopening the case." (Emphasis supplied). (McCorkle Af-

fidavit, Exhibit 4, of Defendant Local 24's Motion for Summary Judgment).

9. Olson Affidavit, Exhibit 2, of Defendant Local 24's Motion for Summary Judgment (Combined Motion).

ord to establish that Mr. Mills either knew or reasonably should have known of the existence of the plaintiff's suit more than 30 days prior to August 11, 1969.

■ Even assuming, however, that the complainant, Mr. Mills, knew or should have known the actions of the plaintiff, Mr. Buresch, more than 30 days prior to August 11, 1971, it is doubtful that the union could have subjected the plaintiff to a trial board hearing and the concomitant internal appellate procedures and rules prior to a determination by the court of the disposition of the suit then pending before it. See Ryan v. International Brotherhood of Electrical Workers, 361 F.2d 942 (7th Cir. 1966). In any event, the record as a whole demonstrates that the plaintiff was not deprived of "due process" or of a "full and fair hearing" as required under the provisions of the LMRDA.

A situation similar to the failure of Local 24 to comply "strictly" with the language of its Constitution arose in Null v. Carpenters District Council of Houston, 239 F.Supp. 809 (S.D.Texas 1965). There, the plaintiff contended that his expulsion from the union was unlawful in that the union failed to follow procedures of its Constitution and by-laws. The court decided to the contrary and reasoned:

"The Labor-Management Reporting and Disclosure Act gives a union member certain rights in connection with his union relations. Those rights are sometimes referred to as a member's 'bill of rights.' The jurisdiction given to the courts by Section 412 is for the purpose of enforcing such rights. The courts are not given jurisdiction to enforce compliance with any and all provisions of a labor organization's constitution and by-laws. The courts have only to do with such constitution and by-laws insofar as they are related to or connected with the question as to whether a union member has been denied rights given him by the Labor-Management Reporting and Disclosure Act. If partic-

ular provision or provisions in such a constitution or by-laws deny a member rights given him under that Act, the courts have jurisdiction to invalidate such provision or provisions. In the present case the plaintiff does not claim that any of the provisions in the union Constitution and By-Laws deny him any of his rights under the Act. It is his claim that the failure of the union to follow certain procedures set out in the union Constitution and By-Laws invalidated his conviction. It is also his claim that the failure of the union to follow such procedures denied him his rights under the Act.

"Under the Act the plaintiff is entitled to a fair hearing on the charges against him. Phillips v. Teamsters, Chauffeurs, Warehousemen & Helpers Local Union No. 560, 209 F.Supp. 768, 771 (D.C.N.J.1962). By a fair hearing is meant that he must be informed of the charges against him and given an opportunity to hear and refute them. Rosen v. District Council No. 9 of New York City, of the Brotherhood of Painters, Decorators & Paperhangers of America, 198 F.Supp. 46, 48 (S.D.N.Y.1961); Smith v. General Truck Drivers, Warehousemen and Helpers Union Local 467 of San Bernardino and Riverside Counties, 181 F.Supp. 14, 17 (S.D.Cal.1960). In cases arising under the Act, the strict requirements of criminal prosecutions are not applicable. Smith v. General Truck Drivers, Warehousemen and Helpers Union Local 467, supra. In the case of Rosen v. District Council No. 9 of New York City, supra, the Court stated (198 F.Supp. p. 49):

'It is not for this court to reexamine the evidence in order to see whether it would have arrived at the same conclusion as did the Trial Board. "[T]here is some evidence which must be accepted as giving a basis for the finding as made and this court is not free to substitute its judgment for that of the Union tribunal with respect to the sufficiency thereof." Dakchoylous v.

Ernst, 1952, 203 Misc. 277, 283, 118 N.Y.S.2d 455, 460, affirmed 3rd Dept., 1953, 282 App.Div. 1101, 126 N.Y.S.2d 534. See also Ames v. Dubinsky, 1947, 5 Misc.2d 380, 409, 70 N.Y.S.2d 706, and cases cited therein.'

"In the present case *the question for determination is not whether the union in all respects followed all of the rules of procedure* contained in its Constitution and By-Laws *but whether in fact the plaintiff was served with written specific charges and given a reasonable opportunity to prepare his defense and afforded a full and fair hearing as required by Section 411(a) (5)* of the Labor-Management Reporting and Disclosure Act." (Emphasis supplied).

■■ The court is aware that "penal" provisions of a union's Constitution are to be strictly construed against the union, Allen v. International Alliance of Theatrical, Stage Employees, etc., 338 F.2d 309 (5th Cir. 1964); Lewis v. American Federation of State, County, and Mun. Emp., 294 F.Supp. 834 (E.D. Pa.1968); however, this rule seems more applicable to substantive rather than procedural aspects of a union's Constitution. A failure to comply "strictly" with the procedural provisions of a constitution would not render the action of the union "void" so long as the "due process" requirements of the LMRDA are satisfied. *Cf.* Simmons v. Avisco, Local 713, 350 F.2d 1012 (4th Cir. 1965).

For reasons to be more fully explored within, plaintiff was not denied a "full and fair" hearing nor was he denied "due process" under § 411(a) (5) of the LMRDA, which provides:

"(5) Safeguards against improper disciplinary action.—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written spe-

cific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

The language of the court in *Null,* supra, 239 F.Supp. at page 815, is clearly dispositive of this issue:

"The failure of the union to follow certain procedures contained in its Constitution and By-Laws did not deprive him of the protection afforded him by Section 411(a) (5) of the Labor-Management Reporting and Disclosure Act. The plaintiff had adequate and timely notice of the charges against him and was afforded an opportunity to refute them at his trial."

Under the unrefuted and unchallenged affidavits filed by the defendant, it is apparent that plaintiff resorted to court action prior to the exhaustion of internal union procedures for grievances. Such action by him was an express violation of Article XXVII, § 1(1), *supra,* which occurred within the geographical jurisdiction of Local 24. Under the express terms of the IBEW Constitution, plaintiff was subject to procedures before Local 24's trial board.

■ The IBEW Constitution is a "contract" between plaintiff and the IBEW to which both parties agreed when the plaintiff became a member of the international union. Adams v. International Broth. of Boilermakers, etc., 262 F.2d 835 (10th Cir. 1958); Cleveland Orchestra Committee v. Cleveland Fed. of Musicians Local No. 4, 303 F.2d 229 (6th Cir. 1962); Smith v. General Truck Drivers et al., 181 F.Supp. 14 (S.D.Cal. 1960). Also under Article XXII, Admission of Members, §§ 3 and 4 are pertinent:

"Sec. 3. The acceptance of an application for membership, and the admission of the applicant into any L.U. of the I.B.E.W., *constitutes a contract* between the member, the L.U. and the I.B.E.W., and between such member and all other members of the I.B.E.W.

"Sec. 4. Each applicant admitted, shall, in the presence of members of

the I.B.E.W., repeat and sign the following obligation:

'I, ..................... in the
(Give name)
presence of members of the International Brotherhood of Electrical Workers, promise and agree to *conform to and abide by the Constitution and laws of the I.B.E.W. and its local unions.* I will further the purposes for which the I.B.E.W. is instituted. I will bear true allegiance to it and will not sacrifice its interest in any manner.' "
(Emphasis supplied).

█ Plaintiff next asserts that he was denied "due process" before the trial board and, specifically, that "due process" required the presence of counsel with plaintiff at the hearing.

Neither the Sixth Amendment to the United States Constitution nor the LMDRA guarantees a union member the right to be represented by legal counsel in union disciplinary proceedings.

"The answer to the contention lies in the statement of the fundamental principle that the right to be represented by counsel, guaranteed by the Sixth Amendment to the Constitution of the United States, does not apply to hearings before labor unions. The reason is obvious. All that a union member is entitled to in any controversy between him and the union is a fair hearing. This means only that before any action is taken against him he must be informed of the charges and be given an opportunity to hear them and refute them. § 101(a) (5) of the Act. And see, Cason v. Glass Bottle Blowers Ass'n, 1951, 37 Cal.2d 134, 143–144, 231 P.2d 6, 21 A.L.R.2d 1387. This satisfies the constitutional concept as to all administrative proceedings. 16A C.J.S. Constitutional Law § 628(b); Corn Exchange Bank v. Coler, 1930, 280 U.S. 218, 222–223, 50 S.Ct. 94, 74 L.Ed. 378; Parker v. Lester, 9 Cir., 1955, 227 F.2d 708, 715–716; National Council of American-Soviet Friendship v. Brownell,

1957, 100 U.S.App.D.C. 116, 243 F.2d 222, 224–225." Smith v. General Truck Drivers et al., *supra,* 181 F. Supp. at p. 17.

In Sawyers et al. v. Grand Lodge, I.A.M., 279 F.Supp. 747 (E.D.Mo.1967), the court stated at p. 756:

"Title I of the LMRDA requires that a union member be informed of the charges against him and that he be given a 'full and fair hearing', but there is nothing in the LMRDA indicating that the denial of counsel of one's choice as representative in an internal disciplinary proceeding is a violation of rights guaranted by Title I, LMRDA, and Sawyers, et al., have cited no cases in support of this proposition.

"In the case of Cornelio v. Metropolitan District Council of Philadelphia et al., 243 F.Supp. 126 (E.D.Pa. 1965), 358 F.2d 728 (3rd Cir. 1966), cert. den. 386 U.S. 975, 87 S.Ct. 1167, 18 L.Ed.2d 134 (1967), a similar argument was made. In that case, plaintiff contended that a provision of the Carpenters' Constitution which is practically identical to Article L, section 10 of the IAM's constitution, prevented him from having a 'full and fair hearing' as required by the LMRDA because it denied him the right to be represented by 'outside counsel'. In discussing this argument, the District Court stated:

' "The answer to the contention lies in the statement of the fundamental principle that the right to be represented by counsel, * * * does not apply to hearings before labor unions. * * * All that a union member is entitled to * * * is a fair hearing. This means only that before any action is taken against him he must be informed of the charges and be given an opportunity to hear them and refute them." (Citations omitted.)' "

In Cornelio v. Metropolitan District Council of Philadelphia, et al., *supra,* the

counsel contention was further discussed, and the court concluded, at page 129:

> "The legislative scheme for the protection of rights of individual members of labor unions clearly contemplates, at least in the first instance, a 'within the family' procedure for resolving intra-union conflicts. So long as both the accuser and the accused are placed on a 'roughly equal footing' (Cox, [Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 836–837 (1960)], supra, p. 836) and are bound by the same restriction, the accused has no cause for complaint in the fact that he is limited to being represented at the trial by a member of the United Brotherhood family. Denial of assistance of counsel is of even less significance as it bears upon the requirement of 'fair hearing' where, as here, the trial body [footnote omitted] is made up of union members who, in all likelihood, will not be 'learned in the law.' "

In answer to a letter from plaintiff dated September 10, 1969,[10] the president of Local 24 agreed to be present as a witness for plaintiff before the trial board at the September 18, 1969, hearing. He further elaborated on the "presence of counsel," stating:

> ". . . My understanding is that attorneys are not permitted to be present in hearings of this kind . . . .
> In the event that you ask the trial board for permission to consult with your attorney outside the trial board, Mr. Mills will have no objection thereto. The union is not entitled to be represented by an attorney either."

An examination of the trial board transcript[11] of September 18, 1969, at page 5, reveals the following:

> "THE CHAIRMAN: Brother Buresch, do you want to have another I.B.E.W. member to act as your counsel?

"THE WITNESS: No, I don't."

A further examination reveals that plaintiff did not consult with counsel "outside the trial board," and thus we have an express waiver on the part of plaintiff of his right to follow reasonable procedures offered to him by Local 24.

An examination of the entire trial board transcript (which was filed in this case as an exhibit, as set forth in footnote 11) reveals that plaintiff was afforded a "fair and full hearing." He was given ample notice of the charges against him; given details as to time and place of his alleged violation and the name of the complaining party against him; afforded the opportunity to cross-examine the witnesses against him, which he did; advised of his right to present witnesses in his own behalf, which he did not; advised of his right to have a fellow IBEW member, of his own choice, assist him, which he refused; advised of his right to have counsel outside the hearing room for consultation, which right he chose to forego; and advised of his rights to appeal, which he refused to follow.

The unchallenged facts submitted by the defendants shows that plaintiff was not denied "due process" in the trial board proceedings.

■ The internal procedures of the union should have been exhausted by the plaintiff prior to court action. These procedures are not unreasonable and do not violate the dictates of the LMRDA. The requirement to pursue internal procedures prior to seeking court relief, found in § 101(a) (4) of the LMRDA, 29 U.S.C. § 411(a) (4), *supra*, was thoroughly examined and explained in Harris v. International Longshoremen's Ass'n, Local No. 1291, 321 F.2d 801 (3d Cir. 1963), at pages 805–806:

> "The proviso of section 101(a) (4), that a 'member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse

10. McCorkle Affidavit, Exhibit 5, of Defendant Local 24's Motion for Summary Judgment.

11. McCorkle Affidavit, Exhibit 5, of Defendant Local 24's Motion for Summary Judgment.

of time)', reflects an effort to encourage mature, democratic self-government of labor organizations through the development of internal procedures for the correction of abuses by union officials and at the same time to provide reasonably expeditious judicial relief to union members who have been denied the fundamental rights guaranteed by Title I of the L.M.R.D.A. Typical statements in Congress of these competing policies may be found in 2 NLRB, Legislative History of the Labor-Management Reporting and Disclosure Act of 1959 [hereinafter cited as Leg.Hist.] 1106 (Senator McClellan), 1667 (Representative McCormack). The common objective and understanding seems to be expressed in the following statement by Senator Kennedy, one of the Senate conferees:

> 'The basic intent and purpose of the provision was to insure the right of a union member to resort to the courts, administrative agencies, and legislatures without interference or frustration of that right by a labor organization. On the other hand, it was not, and is not, the purpose of the law to eliminate existing grievance procedures established by union constitutions for redress of alleged violation of their internal governing laws.' 2 Leg.Hist. 1432."

\* \* \* \* \* \*

"As long as there is likelihood that some decision will be forthcoming within the four-month period, and the aggrieved member has not shown that he will be harmed by being required to seek such a decision, cf. Detroy v. American Guild of Variety Artists, 2d Cir. 1961, 286 F.2d 75, cert. denied, 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388, the purposes of the act require that judicial intervention be withheld until the member has given the internal grievance procedures the chance to operate which Congress deemed to be reasonable. See Sheridan v. United [Brotherhood] of Carpenters [and Joiners], [3d Cir. 1962, 306 F.2d 152] supra, at 160; Deluhery v. Marine Cooks [and Stewards] Union, S. D.Cal.1962, 211 F.Supp. 529; Acevedo v. Bookbinders [, etc.] Local 25, S.D. N.Y.1961, 196 F.Supp. 308.

"The foregoing interpretation is supported by the legislative history of section 101(a) (4)."

\* \* \* \* \* \*

"Throughout, the emphasis is upon a member's seeking or actually receiving internal relief during the statutory period, not upon the establishment of procedures which shall guarantee a final decision within that period before a member may be required to utilize them." (p. 806).

The internal procedures established by the IBEW Constitution for the presentation of grievances by union members is not unreasonable nor calculated to prevent a fair hearing and resolution of such problems. To allow the plaintiff to forego the opportunity of permitting the union to resolve such internal union affairs would defeat the clear legislative intent behind the passage of the statute. As the defendants contend, to allow plaintiff to present his grievances directly to the courts in the first instance without the prior exhaustion of internal procedures established by the IBEW and its local unions under their Constitution would be unwarranted where such procedures are not unreasonable.

For the reasons stated herein, the motion by each defendant for summary judgment pursuant to Rule 56, F.R. Civ.P., will be granted by an appropriate order filed contemporaneously herewith.